The State, *ex rel.*, v. School Board.

No. 23,936.

THE STATE OF KANSAS, ex rel. Tinkham Veale, as County Attorney of Shawnee County, *Appellant*, v. THE SCHOOL BOARD OF TECUMSEH RURAL HIGH-SCHOOL DISTRICT No. 4 et al., *Appellees*.

No. 23,937.

THE STATE OF KANSAS, ex rel. Tinkham Veale, as County Attorney of Shawnee County, *Appellant*, v. THE SCHOOL BOARD OF TECUMSEH RURAL HIGH-SCHOOL DISTRICT No. 4 et al., *Appellees*.

SYLLABUS BY THE COURT.

1. RURAL HIGH-SCHOOL DISTRICT—*Evidence of Indebtedness—Precludes Its Disorganization.* Under chapter 250 of the Laws of 1921, a certain note for rent under a lease which the rural high-school district of which the defendants were officers had issued, constituted evidence of indebtedness such as to preclude its disorganization.

2. SAME—*Evidence of Indebtedness.* A lease for a school room for a term of years did not constitute such evidence of indebtedness as indicated in paragraph one hereof, nor did certain teachers' contracts.

3. SAME—*Disorganization of District—Statutes.* · The enactment of chapter 250 of the Laws of 1921 did not restrict disorganization of rural high-school districts to those organized under section 2 of such chapter.

4. SAME—*Contracts—Presumption of Knowledge of Legislative Power.* Those contracting with such high-school districts are presumed to know that the legislature may provide for the disorganization of such districts.

5. SAME—*No Wrong Without a Remedy.* Although no provision be made for the collection of debts incurred by such disorganized districts, it may be assumed that means will be found to sustain the maxim, no wrong without a remedy.

Appeals from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed February 11, 1922. Affirmed.

*Tinkham Veale*, county attorney, *Ralph H. Gaw*, assistant county attorney, *J. B. Larimer*, and *W. Glenn Hamilton*, both of Topeka, for the appellant.

*J. J. Schenck*, and *C. P. Schenck*, both 'of Topeka, for the appellees.

The opinion of the court was delivered by

WEST, J.: These actions were brought by the state on the relation of the county attorney against the district board of Tecumseh rural high-school district No. 4, and its officers, the first to compel the defendants to pay off the indebtedness of the district and call an election for its disorganization, and the second, for an injunction against the defendants to prevent them from opening school in the district or performing any act or incurring any indebtedness on behalf of the district, except to call the election prayed for. Both were denied by the trial court and the plaintiff appeals.

The parties agreed upon certain facts from which it appears that the rural high-school district was organized in September, 1919, and on July 11, 1921, an enumeration of the legal electors was made showing 331, and on July 15, thereafter, a petition requesting an election to disorganize the district was filed and presented in due form.  A majority of the board refused to call the election prayed for, giving as a reason an opinion from the county superintendent that the defendant district had outstanding warrants in the sum of $2,006 and owed teachers for services $378.33; that a building had been rented for five years at $20 a month and a note had been given for $1,200 for the rental not yet due; that teachers had been employed, contracts with them covering services amounting to $4,700.

The alternative writ of mandamus set forth that it was the duty of the defendants to call the election, but the answer alleged that on account of the contracts and indebtedness already made and incurred they had no right to call the election, and averred that when the building was leased the law required them to provide suitable rooms for high-school purposes and employ teachers and incur indebtedness on account thereof.

The plaintiff contends that under chapter 250 of the Laws of 1921 the election for disorganization ought to be held.  It is claimed that the contracts were hurried up in anticipation of the taking effect of this statute and that no indebtedness was incurred as contemplated thereby.

On the part of the defendants it is insisted that the contracts and indebtedness were made when the law required them to be made and that the act of 1921 does not apply and that if it were held to apply it would be void because impairing the obligations of contracts.

By chapter 262 of the Laws of 1911, the electors of certain townships were authorized to organize and maintain township high schools.  Chapter 278 of the Laws of 1913 amended section 1 of this act limiting the establishment of such schools to townships in which there were no incorporated cities of certain named population. Chapter 311 of the Laws of 1915 provided for the establishment of rural high schools upon the presentation of a petition signed by two-fifths of the legal electors of the proposed district.  Section 6 provided that the board should have the care and control of all property belonging to a high-school district except as in the act provided, and have the powers prescribed by law for school district boards, and authorized the board to secure sites for schools either by

donation, purchase or condemnation. Chapter 284 of the Laws of 1917 authorized the legal electors residing in territory containing not less than sixteen square miles and comprising one or more townships within the boundaries thereof to form a rural high-school district. The act of 1915 was amended as to the calling and holding of the election, and a proviso was for the first time adopted to the effect that—

"If any rural high school shall heretofore have voted to organize under the provision of this section, and shall not have accumulated any property, nor. incurred any expense or obligation, nor issued any bonds or other evidence of indebtedness, such rural high school may be disorganized upon a petition, . . ."

Section 5, touching the authority of the board, was amended so as to vest in the rural high-school board the care and control of all property except as therein provided and—

"The rural high-school board shall have authority to secure a site, selected as provided in section 2 of this act, either by donation or purchase, to build or purchase a schoolhouse, and to hire a schoolhouse, school rooms, or other property to be used for school purposes; and the district board of any school district shall have authority and is hereby authorized to lease or cause to be leased to any rural high-school board any schoolhouse, school rooms, or other property to be used for rural high-school purposes."

Chapter 250 of the Laws of 1921 amended section 2 of the act of 1917 and when it came to the proviso it used this language:

"That if any rural high-school district shall have voted to organize under the provisions of this act and shall not have issued any bonds or other evidence of indebtedness or if the same shall have been issued and such bonds or evidence of indebtedness shall have been paid in full said district may be disorganized in the following manner: . . ."

Section 2 provided that upon the disorganization of such rural high-school district, the property owned by the district should be divided among the constituent districts in proportion to assessed valuation and should the board own any property the board had authority to sell it and distribute the money.

It will be seen, therefore, that when the alleged indebtedness in this case was incurred and the contracts entered into, disorganization could be had by election provided the district had not accumulated any property or incurred any expense or obligations or issued any bonds or other evidence of indebtedness. But when the act of 1921 took effect the power to disorganize was vested only in districts which had not issued any bonds or other evidence of indebtedness, or having issued such, had paid them off.

The proceedings for calling the election being regular the question to be determined is whether or not the indebtedness existing on the part of the defendant district is such as is included in and indicated by the expression "issued bonds or other evidence of indebtedness." Under the familiar rule such an expression would ordinarily mean the same as if it said "bonds or other similar indebtedness."

No provision is found in the statute and none is pointed out as to what was to become of the indebtedness when districts were disorganized before the act of 1921 took effect. No bonds existed in this case and whether the note given for the rental amounted to "other evidence of indebtedness" is the vital question.

It is manifest that what was meant by the expression "no expense or obligation" used in the act of 1917 is not included within the language of the act of 1921. In the ordinary acceptance of the term any debt whether for teachers' wages or for the lease of a school building would be an obligation. Such obligation is necessarily an expense, but it is certainly not a bond.

In the act of 1917, this language is used: "nor issue any bonds or other evidence of indebtedness." In the act of 1921: "and shall not issue any bonds or other evidence of indebtedness." It is but giving a common and natural effect to the language used to say that the other evidence of indebtedness means such as has been issued and distinct from such indebtedness as may have been merely incurred or created. Webster's New International Dictionary defines "issue" a transitive verb, "To cause to issue; to send or let out; to emit; discharge. To deliver, or give out, as for use; as, to issue provisions. . . . To send out officially; . . . to put into circulation; . . ." In *The State v. Pearce,* 52 Kan. 521, 35 Pac. 19, it was held that to issue a county warrant or order means to send out, deliver or put into circulation. It was there said:

"A county warrant or order is 'issued' when made out and placed in the hands of a person authorized to receive it, or is actually delivered or taken away." (p. 528.)

In *Steinbruck v. Milford Township,* 100 Kan. 93, 163 Pac. 647, it was held that municipal bonds are not issued until they are sent out, delivered and put into circulation.

While the lease itself may be evidence of indebtedness for the rent specified therein it is not customary in legal parlance to speak of issuing leases. It is quite customary, however, to speak of issu-

The State, *ex rel.,* v. School Board.

ing bonds, notes, warrants and like evidence of indebtedness. While, therefore, teachers' contracts cannot be said to have constituted "other evidence of indebtedness" which had been "issued" by the district, it must be held that the note given for the rent, provided for in the lease, was such evidence of indebtedness.

Whatever condition the districts desired to have brought about by the amendment procured by the passage of the act of 1921 or whatever the object sought to be accomplished, the fact remains that both statutes leave as a bar to disorganization such evidence of indebtedness already issued and existing.

But it is contended that the note in question is not an obligation of the high-school district but only a personal obligation of the persons signing it; that the note is a complete instrument without ambiguity; that it does not mention the lease, and falls within section 6590 of the General Statutes of 1915, being section 70 of the negotiable-instruments law, which provides that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity," as construed in *Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415. The note is in the ordinary form, "I promise to pay," signed "Mrs. Vinnie L. Lynch, Director, H. T. Lee, Clerk, and J. O. Niecum, Treasurer." The lease purports to be made by the school board of rural high-school district No. 4 and is signed "The School Board of Rural High-School District No. 4 by Mrs. Vinnie L. Lynch, Director, J. O. Niccum, Treasurer, H. T. Lee, Clerk."

Mr. Bergmann testified that at the same time the lease was executed the note was signed by the members of the board for security for the rent due under the lease; that both the note and the lease were prepared before either was signed, and both given to the board at the same time and returned to him duly executed. A warrant for one month's rent drawn on the treasurer of the district was introduced, signed, "By order of the District Board: Mrs. Vinnie L. Lynch, Director. Attest: L. P. Pressgrove, Clerk. Countersigned: J. O. Niccum, Treasurer." Mr. Bergmann testified that he credited this $20 on the note.

Mrs. Lynch testified among other things that it was the intention of the board to bind the district.

"Q. You did not intend to bind yourselves personally? A. Oh, no, no, no. . . . We signed it as members of the board. . . .

"Q. Yours or the district board's? A. Oh, no, no, no. The district board's."

Also, that the lease and note were not signed until several days after the meeting, at which time they agreed to make the lease; that the note was signed some three months after the lease was signed.

"Q. When was the note first mentioned? A. About the first of April.

"Q. About the first of April. That is the first you ever heard of the note? A. Yes, sir.

"Q. To be given in connection with this lease, and the note had not been written out, and was not signed or agreed to be signed at the time the lease was signed? A. No, not at that time.

"Q. Was it before the election of the school district in April? A. It was before.

"Q. How long? A. Well, the election was held on the 8th day of April, I believe. . . .

"Q. Did Mr. Lee sign when you signed the note? Did he sign the note? A. Yes, sir.

"Q. The lease had been signed prior to that? A. Well shortly after the 22nd day of December.

"Q. About how long? A. Oh, possibly four or five days.

"Q. Now, what reason was given you by Mr. Bergmann or anyone else, why a note was wanted to be signed there by the board? A. There was no reason given to me at all.

"Q. None at all. Did you hear Mr. Lee give any reason why he was signing or why a note was to be given? A. No, sir.

"Q. Did you hear Mr. Niccum? A. No, sir.

"Q. You never heard of any reason? A. No, I never heard of any reason. I considered it a good thing to do."

She further testified that a few days after the lease was signed it was discussed and ratified at a regular meeting of the board when all members were present.

In *Lonnon v. Batchman,* supra, the note was signed by four persons and at the right, opposite a bracket were these words: "Members Board of Directors Sunflower Lead & Zinc Co." The defendants denied that they executed the note individually or were personally liable, and it was held that it was error to receive oral evidence to support those averments. In the opinion it was said:

"In the present case we have merely the note itself, and it is not signed by the president and secretary of the corporation, nor in the way in which notes are usually executed by corporations." (p. 268.)

In *Bank v. Trust Co.,* 107 Kan. 700, 193 Pac. 316, the note was signed "The Salina Trust Company, W. B. Middlekauff, L. A. Mergen, Treas.," Mergen answered that he signed it as treasurer of

the trust company; that it was not his obligation, and that the payee had knowledge of these facts, and it was held that this stated a defense. It was there said:

"There is an apparent contradiction between *Lonnon v. Batchman* and the prior decisions of this court, but the contradiction is apparent only, not real. In the Batchman case the Sunflower Lead & Zinc Company does not appear to be liable, and it does not appear that any attempt was made to render it liable or to sign the name of the corporation to the note. In the present case the name of the corporation is signed to the note and that of defendant Mergen appears as treasurer. That takes this action out of the rule declared in *Lonnon v. Batchman,* 103 Kan. 266, 173 Pac. 415, and puts it under the rule declared in *Grocer Co. v. Lackman,* 75 Kan. 34, 88 Pac. 527, and the other decisions of this court that support that rule." (p. 703.)

If, in the case before us, we had simply the signatures of the three persons and enclosed in a bracket at the right the words: "Members Board Rural High-school District No. 4, of Shawnee County, Kansas," and this only, we would have practically what was before the court in *Lonnon v. Batchman.* But here we have the lease executed in proper form to bind the board, and reciting that it is made by the board, the evidence connecting this up with the note given for the rent specified in the lease, and also the three words: "Director, Clerk and Treasurer" which by statute and long familiar usage and knowledge are the official titles applied to school-district officers in this state. We have also the fact that the twenty-dollar warrant issued by the board in due form for one month's rent was indorsed on this note. No dealer in negotiable instruments who wanted to buy a promissory note signed "Mrs. Vinnie L. Lynch, Director, H. T. Lee, Clerk, J. O. Niccum, Treasurer," would fail to believe or suppose that this was not the mere note of the persons named, and if he lived in Kansas he would know that they were describing themselves as the statute and established custom describe officers of school districts, and the appropriate words would indicate with fair clearness the intention of the persons named to be held officially and not personally.

Section 2 of the act of 1917 authorizes disorganization on the part of any rural high-school district which shall "heretofore have voted to organize under the provision of this section," while the act of 1921 uses the phrase, "under the provisions of this act." This is claimed to render the latter act inapplicable to the defendant district. But the use of the words "section" and "statute" should not be given so restricted a meaning. The change of language from

"shall heretofore have voted to organize" to "shall have voted to organize" was given effect in *The State, ex rel., v. McPherson County,* 107 Kan. 144, 190 Pac. 594, and it can hardly be deemed that by the amendment the legislature intended disorganization for those districts only which had been organized under the provisions of the act of 1921.

Touching the claimed impairment of the obligations of contracts it may be observed that as to municipal and quasi-municipal corporations the legislature has plenary power not only to regulate, but to create and to destroy. Those who contract with rural or other school districts must be presumed to know that the legislature may provide for their disorganization, and while no method or means of collecting outstanding bonds or other indebtedness in case of disorganization be specially provided for it may be assumed that some means will be found to carry out the maxim that there can be no wrong without a remedy. (See *Meriwether v. Garrett,* 102 U. S. 472; *Wolff v. New Orleans,* 103 U. S. 358, 367; *Graham v. Folsom,* 200 U. S. 248; *Hubert v. New Orleans,* 215 U. S. 170.)

It is not necessary to determine now how far in advance a rural high-school district board may contract in respect to teachers, buildings, equipments and other necessary matters.

For the reasons indicated the rulings of the trial court herein are held to have been correct, and such rulings are affirmed.