No. 29,385.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff*, v. WILLIAM VAN METER, as Director, J. T. WHITE, as Treasurer, and CHARLES BRION, as Clerk of Rural High-school District No. 4, Ottawa County, *Defendants*.

(289 Pac. 399.)

Opinion filed July 5, 1930.

*William A. Smith*, attorney-general, *C. L. Kagey* and *L. M. Kagey*, both of Beloit, for the plaintiff.

*L. A. McNalley*, of Minneapolis, and *Z. C. Millikin*, of Salina, for the defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel the school board of a rural high-school district to call an election to vote on the disorganization of the rural high-school district. In the motion for the alternative writ it is alleged that the district was organized in 1928 and had not issued any bonds or other evidence of debt. That on November 6, 1929, there was filed with defendants a petition to call an election on the disorganization of the district, which petition was signed by more than two-fifths of the legal electors residing in the district, as determined by an enumeration taken for that purpose by an elector and filed with the district clerk, and that defendants had failed and refused to call the election. The answer and return pleaded two reasons, which are now urged, for

not calling the election: First, that the enumeration of the electors in the district filed with defendants was inaccurate in that it enumerated 397 electors only, when there were 443 electors residing in the district. Second, that at the time the petition was presented the district was indebted to various persons and firms in the aggregate sum of $2,915.91, for which the warrants of the district had been issued and which warrants were unpaid. A list of the warrants was set out.

The pertinent portion of the statute (R. S. 72-3502) necessary to be considered reads as follows:

"*Provided,* That if any rural high-school district shall have voted to organize under the provisions of this act and shall not have issued any bonds or other evidence of indebtedness, or if the same shall have been issued and such bonds or evidence of indebtedness shall have been paid in full, said district may be disorganized in the following manner: Whenever a petition signed by two-fifths of the legal electors residing in the territory of the said rural high-school district, to be determined by an enumeration taken for that purpose by any legal elector residing in said district, and by him certified under oath, be filed with the clerk of the board of said rural high-school district and requesting said school board to call a special election to vote on the disorganization of the rural high-school district it shall be the duty of said school board to forthwith call such special election of said district to vote on the disorganization thereof. All elections for the purpose of disorganizing any such rural high-school district, together with the time and manner of the notice and the manner of the election held for the disorganization of said rural high-school district, shall be upon the same terms and provisions hereinbefore prescribed in this act for the establishing and locating of said rural high-school district, except that such petition shall pray, such notice shall declare and such election shall be held for the disorganization of said rural high-school district; but in order for said election to carry and become effective more than fifty per cent (50%) of the total number of electors in said district, as shown by the enumeration hereinbefore described, must have voted in favor of the disorganization of said district."

Evidence was taken by deposition. It was stipulated that the petition was signed by 187 qualified electors. The enumeration taken by one of the electors, verified and filed with the defendants at the time the petition was filed, enumerated 397 electors in the district. Defendants thought the enumeration inaccurate and had an enumeration taken. The number of electors shown by this enumeration is not disclosed by the evidence. At the taking of depositions plaintiff conceded 23 names should have been added to the enumeration filed. This would make the number of electors 420. The defendants contended 52 names should have been added, which would have made the total number 449, and in their brief they say the

evidence disclosed the total number of electors to have been 451. Since the number of qualified electors signing the petition—187—is more than two-fifths of the largest number of electors shown by the evidence or claimed by defendants—451—plaintiff contends that the inaccuracy of the enumeration filed by the elector with the petition is of no consequence. It will be noted by the statute that this enumeration required to be filed by an elector with the petition, asking the board to call the election, serves two purposes: First, to enable the district board, by considering this enumeration and the petition, to determine whether two-fifths of the electors in the district had signed the petition. Second, in order to carry the election, when called in response to the petition, "more than fifty per cent (50%) of the total number of electors in said district, as shown by the enumeration hereinbefore described, must have voted in favor of the disorganization of said district." Under this provision it would become important, in counting the votes cast at the election to determine whether the proposition to disorganize the district had carried, to have an accurate enumeration filed with the petition. If the enumeration filed with the petition were correct, 198 votes in favor of disorganization would carry the election; but if the enumeration shown by the evidence is correct, it would require 226 votes to carry the election. This is a substantial difference and shows the importance of having a correct enumeration filed with the petition.

Plaintiff argues that the statute does not require an absolutely exact enumeration—that to so construe it would make it impracticable, for it is a matter of common knowledge that enumerations taken by state or federal authorities are seldom if ever absolutely complete, and that all the statute requires is good faith on the part of those taking the enumeration and a practically accurate enumeration. If it were conceded that is the correct rule, it would be difficult in this case to hold the enumerators acted in good faith. The enumerators made no canvass to determine the number of electors. They got a list, perhaps of taxpayers, from the county clerk and then took the poll book of some election and got names off of that, and then used "our mind and memory as to the newcomers and those that disappeared." It would seem they were rather lax in using their memories, for nine persons whose names appeared on the petition were not enumerated, and as many as twenty-three more who were residents, and had been for many years, of the district, and were well-known to the enumerators, were not enumerated. In view of this evidence and the twofold purpose of the enumeration

as provided by the statute, we are forced to say that the enumeration was insufficient.

On the second point urged by defendants, plaintiff asks us to say that warrants issued by the school district for valid indebtedness of the district, which warrants have not been paid, are not "evidence of debt" as that term is used in the statute. We are unable to so hold. There was litigation over the district when it was organized in 1928 (*State, ex rel., v. Rural High-school District,* 128 Kan. 615, 278 Pac. 721). This caused expense to the district. Supplies and equipment had been purchased, teachers had been employed, and the school had been conducted several months at the time the petition here in question was presented. The district owed the amount stated in its return and answer and had issued its warrants therefor. It had no money to pay the sums owed and would have none until the taxes of 1929 were collected by the county treasurer and disbursed to the district. The district, therefore, had unpaid debts, for which it had issued its warrants. Plaintiff contends that these warrants are not "evidence of indebtedness" as that term is used in the statute quoted, and argues that to construe such warrants to be evidence of indebtedness would render the statute meaningless and the procedure for the disorganization of the district ineffectual, for there would seldom, if ever, be a time when the district would not have outstanding unpaid warrants for equipment or current expenses. This argument does not impress us as being forceful. A rural high-school district is organized only after a vote therefor by the electors of the district (R. S. 72-3501, 72-3502), and if no provision for its disorganization had been made by the legislature, no reason suggests itself why such omission would have been fatal to the statute. Hence, the fact that the statute permits disorganization only in a situation which would seldom arise does not render the provision invalid. The statute provides for issuing the warrants of the district (R. S. 10-801 *et seq.*). Warrants represent indebtedness (Laws 1921, ch. 253; R. S. 72-3516). They are drafts on anticipated revenues (*Schoenhoeft v. Kearny County,* 76 Kan. 883, 92 Pac. 1097), and while they differ from bonds in several respects, they are usually spoken of as being "issued" and as being "evidence of indebtedness," as are bonds and notes of public corporations (*State, ex rel., v. School Board,* 110 Kan. 779, 782, 204 Pac. 742). The evidence shows that a tax had been levied on the property in the district sufficient to raise more than $10,000, approximately half of which would be

paid in December, 1929, and in due time disbursed to the district. Plaintiff argues that since funds had been provided to pay these warrants they should be disregarded. The legislature, in the statute previously quoted, dealt with that question and provided that if evidence of indebtedness had been issued the election for disorganization of the district should not be called until the indebtedness was paid. The fact that future payment of the indebtedness had been provided by a tax levy was not deemed sufficient by the legislature. There is no reason why we should deem it sufficient. If the statute is to be amended, the legislature, not this court, should amend it.

The result is the writ sought by this action should be denied. It is so ordered.