No. 35,448

THE CONTINENTAL PIPE LINE COMPANY, *Appellant*, v. CLAUDE CART-WRIGHT, as County Clerk of Sedgwick County, EZRA BEARD, CLAUDE EPPERSON and W. E. ALDRIDGE, as County Commissioners of Sedgwick County, and THE STATE COMMISSION OF REVENUE AND TAXATION, *Appellees*.

(118 P. 2d 1052)

Opinion filed November 19, 1941.

J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan, John H. Hunt and George M. Brewster, all of Topeka, for the appellant.

P. J. Warnick, Lloyd Kagey, both of Wichita, Vernon Rosenstahl and E. H. Hatcher, both of Topeka, for the appellees.

The opinion of the court was delivered by

THIELE, J.: On September 22, 1941, the plaintiff brought an action to enjoin the county clerk and the county commissioners of Sedgwick county from extending on the tax rolls of the county taxes based on an alleged unlawful assessment of plaintiff's property. At the time the action was filed a restraining order was issued, but no bond was then required. The defendant officers of Sedgwick county filed their motion to have the state commission of revenue and taxation made a party defendant, and that motion was sustained. They also filed a motion to dismiss the petition and dissolve the restraining order, and later filed a supplemental motion, the grounds of which will be hereafter referred to so far as is necessary. A motion of the state commission of revenue and taxation, to permit it to adopt as its motion the supplemental motion above mentioned, was allowed by the trial court. The trial court heard the motions and, as a result, on October 14, 1941, made its order setting aside the restraining order and dismissing the petition. The plaintiff promptly appealed to this court, which on October 15, 1941, made its order staying proceedings in the trial court and continuing the restraining order in force and fixing a necessary bond, which was given.

So far as is necessary to notice, the petition named as defendants only the county clerk and the county commissioners of Sedgwick county, and alleged that plaintiff owned and operated pipe lines in Sedgwick county and elsewhere in Kansas; that on April 1, 1941, plaintiff had filed with the state commission of revenue and taxation, hereafter referred to as the commission, its duly verified tax return; that on May 23, 1941, the commission, acting as a board of appraisers, entered its order pretending to finally assess plaintiff's property at $1,458,345, a copy of that order being attached and made a part of the petition; that at its own request plaintiff appeared before the commission on June 9, 1941, and presented facts and reasons why the pretended assessment was arbitrary, capricious, fraudulent and illegal, and requested the commission as a board of appraisers to reduce the pretended assessment; that on June 24, 1941, the commission as a board of appraisers assessed plaintiff's property at $1,448,315 and notified plaintiff by letter, a

copy of which was attached to and made a part of the petition, and about the same date the commission certified the pretended assessment to the county clerks of the counties in which plaintiff owned property, the valuation certified to Sedgwick county being $217,366; that on July 7, 1941, plaintiff filed with the commission as a board of equalization its protest of assessment and appeal from the assessment, a copy being attached and made part of the petition; that on July 16, 1941, plaintiff appeared before the commission sitting as a board of equalization and presented evidence showing the assessment to be arbitrary and discriminatory, etc., and that notwithstanding, the commission acting as a board of equalization entered its order fixing the value for taxation of plaintiff's property at $1,448,315, a copy of that order being attached and made a part of the petition. Plaintiff further alleged the commission willfully and intentionally assessed plaintiff's property in excess of its true value in money, etc.; that the county clerk is required to and, unless he is enjoined, will use the pretended and unlawful assessment in determining the amount of tax to be charged against plaintiff's property in each taxing district of the county, and that he is charged with the obligation of certifying to the county treasurer the amount of tax levied on plaintiff's property. Plaintiff further alleged that unless the defendants are restrained and enjoined from extending the pretended and illegal assessment on the tax rolls, and from certifying the tax levy based on that assessment to the county treasurer, plaintiff will suffer irreparable loss. As indicative of plaintiff's own version of the relief to which it was entitled under its allegations we note the prayer was for an order restraining the defendants from extending the pretended and illegal assessment on the tax rolls and from certifying the tax levy based thereon to the county treasurer; that upon final hearing the restraining order to be made permanent; for its costs, and for such other and further relief as may seem equitable and proper. It is not necessary to state the details of the exhibits attached to the petition. The restraining order made at the inception of the action was consistent with the first portion of the prayer of the petition.

The defendants' first motion was to dissolve the restraining order; their supplemental motion was to dissolve the restraining order and dismiss the petition. Both of these motions asserted as grounds thereof that the placing and extending of the assessment on the tax rolls of Sedgwick county would not in any way prejudice or affect

the right of the plaintiff to contest any excessive appraisement of its property, and that plaintiff had no right, either in law or equity, to prevent the assessment of its property and placing the assessment on the tax rolls of Sedgwick county, and that the petition contained no allegations challenging the right of the county commissioners to make the assessment or of the right of the county clerk to place it on the tax rolls of the county. The second motion also alleged that the petition showed on its face that plaintiff was not entitled to the equitable relief prayed for therein.

Apparently in the trial court the defendants asserted a number of reasons why they believed their motion should be sustained, and plaintiff in its brief has anticipated that certain arguments would be presented by the appellees in support of the trial court's ruling. In our opinion the matter is determined by the question whether the allegations of the petition are sufficient to sustain the relief sought against the county clerk and the county commissioners of Sedgwick county.

There is no question under the allegations of the petition but that plaintiff is a pipe-line company operating in more than one county. A brief review of our statutes with reference to taxation discloses that generally the powers granted to and duties enjoined on the former state tax commission are now vested in the commission of revenue and taxation. (See G. S. 1939 Supp. ch. 74, art. 24.) The use of the term commission will refer to either as used in the statutes hereafter mentioned, all of which references are to G. S. 1935. It is the duty of the commission "to make appraisement and assessment . . . of gas pipe lines and property, of all oil pipe lines and property . . ." (79-1404, *fifteenth.*) It is the duty of such a pipe-line company to make and file with the commission annual reports containing certain required information (79-702) and unless the property is situated entirely within the limits of one county (79-711) the commission, acting as the state board of appraisers, shall assess the value of the property of pipe-line companies (79-704), the company having the right to appear before such board of appraisers before the assessment is determined (79-706), and after the assessment is determined to make application for the correction of the assessment (79-707). After completion of the assessment by the board of appraisers the amount of the assessment shall be apportioned by the commission among the several counties and the taxing districts therein (79-709). The results are certified to the

several county clerks, and each county clerk certifies the amounts so apportioned to the several taxing districts within his county "and he shall at the proper time place such assessments on the proper tax roll of his county, subject to the same percent of levy for different purposes as is laid upon other property." (79-710.) We have not overlooked the effect of 79-1409 providing for a state board of equalization, but that section is not pertinent to the present discussion.

An examination of the allegations of the petition discloses not that the above statutes were disregarded, but that they were followed. The complaint, in substance, is that the actions of the commission in acting as the state board of appraisers and as the state board of equalization were arbitrary, capricious, fraudulent and illegal. We need not examine whether those allegations were mere conclusions of the pleader, or whether other statements of the petition, supplemented by the statements and showings made in the various documents attached as exhibits to the petition and made a part thereof by reference, were sufficient as pleadings of fact. It clearly appears from the petition and the exhibits that the plaintiff's complaint is as to the correctness of the assessment. Under the statutes above reviewed, when that assessment has been made by the commission acting as the state board of appraisers, and when, after apportionment has been made and certified to the county clerk, then neither the county clerk nor the county commissioners have any power or authority to raise or lower the assessment in any particular or to alter the apportionment of it. It does not appear from the statutes the county commissioners have any duties to perform or powers to exercise in connection with this type of assessment, and the duty of the county clerk appears to be purely ministerial. While it has been held that the performance of a ministerial duty may be controlled by mandamus or injunction (*Martin, Governor, v. Ingham,* 38 Kan. 641, 17 Pac. 162) the officer may not be controlled where the act sought to be controlled, or as here enjoined, is one which the statute compels him to perform (*Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 235; *Randel v. Knapp,* 153 Kan. 437, 111 P. 2d 891). If the act of the county clerk were discretionary, a court would only enjoin where official power was clearly abused. Here the act complained of was that of a body over which the county clerk had no power or supervision whatever. (See *Fairchild v. City of Holton,* 101 Kan. 330, 166 Pac. 503.)

As has been noted, this action was commenced in September, 1941,

and before any tax based on an assessment for 1941 would be due. If it be considered an action to enjoin collection of a tax, it was prematurely brought. If it be considered as an action to enjoin an assessment—and in our opinion that was its purpose—the person or board to be enjoined would be the one making the assessment, and not an officer whose only duty, after the assessment was certified to him, was to extend it on the tax rolls. In this case the assessment was made by the commission sitting as the state board of appraisers, and any action against it, in the absence of a statute to the contrary—and there is none—must be brought in the county where the cause arose. (G. S. 1935, 60-503, *second; State, ex rel., v. Flannelly*, 96 Kan. 372, 152 Pac. 22; *City of Coffeyville v. Wells*, 137 Kan. 384, 20 P. 2d 477; *Rome Mfg. Co. v. State Highway Comm.*, 141 Kan. 385, 41 P. 2d 761; and *Verdigris River Drainage Dist. v. City of Coffeyville*, 149 Kan. 191, 86 P. 2d 592.)

We are of the opinion the petition does not state facts sufficient to constitute a cause of action nor to warrant the relief sought and that the judgment of the trial court was correct and should be, and is, sustained and affirmed. The order of this court of October 15, 1941, staying proceedings is vacated and set aside.