No. 37,812

THE STATE OF KANSAS, *ex rel.* WILLIS H. MCQUEARY, County Attorney of Miami County, Kansas, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF MIAMI COUNTY, KANSAS et al., *Appellees.*

(215 P. 2d 631)

*A. J. Herrod,* of Kansas City, argued the cause, and *Oliver D. Rinehart,* of Paola, was with him on the briefs for the appellant.

*L. Perry Bishop,* of Paola, and *John H. Morse,* of Mound City, argued the cause, and *Bernard L. Sheridan* and *J. Milton Sullivant,* both of Paola, were with them on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action challenging validity of the organization of a joint rural high-school district, and seeking to oust it from exercising any corporate powers.

The plaintiff appeals from a ruling and decision quashing service of process issued against the board of county commissioners, the county clerk and the county treasurer of Linn county, and from an adverse ruling on a demurrer to the petition filed by LaCygne Rural High-school District No. 6, Joint, and by the three members of its board of education.

Insofar as the ruling on the motion to quash is concerned, it is noted that in its original brief, appellant devoted considerable space to the question. In their brief the appellees point out that the ruling was made on March 14, 1949, and that notice of appeal was not filed until June 25, 1949, and that by reason of the belated appeal the question is not properly before this court for consideration. In its reply brief the appellant states that "appellees appear to be correct." The ruling quashing process was a final order (*Newberry v. A. K. & C. Rly. Co.,* 52 Kan. 613, 35 Pac. 210) from which an appeal must be perfected within two months (G. S. 1947 Supp. 60-3309). The appeal was not perfected in time and the ruling is not before us for consideration.

Preliminary to discussing the demurrer to the petition, we note that the original petition named as defendants the board of county commissioners, the county clerk and the county treasurer of Miami county, the like officers of Linn county, LaCygne High-school District No. 6, and Danner, Modesitt and Teagarden, pretended members of the board of education of pretended LaCygne Rural High-school District No. 6. If the Miami county officials filed any pleadings, they are not included in the abstracts. Other defendants filed their motion to make the petition more definite and certain and to strike certain allegations, which motion was sustained in part and denied in part and thereafter an amended petition was filed. The

amended petition is long and to a degree repetitious. We summarize its allegations.

After setting forth the status of the parties, it is alleged that in the year 1946 and the early part of 1947 an attempt was made to organize a rural high-school district in Linn county and Miami county, consisting of certain described territory, which attempted organization was designated as LaCygne Rural High-school District No. 6, Joint, and was void for the following reasons:

That certain persons residing in the two counties circulated petitions and filed the same with the board of county commissioners of Linn county requesting the board to call a special election to vote on the establishment of a rural high school, the petitions contained the names of persons purported to be legal electors residing in the territory; and

". . . that no one of such petitions were signed by two-fifths of the legal electors residing in the city of LaCygne and no one of such petitions were signed by two-fifths of the legal electors residing in the territory of said proposed rural high school district outside of the city of LaCygne, but some of said petitions contained as few as seven, and other petitions contained as many as 166 names, and on said petitions appeared many names of persons who were not legal electors residing in the proposed territory to be incorporated in said Rural High School District, and said petitions also contained the names of many women who signed their names by writing either the initials or the first names of their husbands; that it was and is impossible to determine from said petitions the number of electors which the persons circulating and filing said petitions claimed resided in the proposed territory; that plaintiff is unable to state the date these petitions were filed, or whether all of them were filed the same day or upon different days.

"That some of the names on the petitions were not the signatures of the electors but only their names written by someone else and there was no evidence presented to the Board of County Commissioners of Linn or Miami County when the petitions were presented to them to establish the fact that every one of the names appearing on said petitions were written by the hand of said person, and no attempt was made to ascertain said fact, and said Commissioners did not then and do not now know if the signatures were genuine.

"That some of the petitions did not accurately recite the boundaries of said proposed district and the approval as required by law was not recited therein and was not in fact secured before the petitions were circulated, signed and filed.

"That the same name appeared on more than one petition and the pretended enumerations were in some cases made from the petitions which were signed prior to the pretended enumerations. That if the names of purported legal electors whose names are signed to said petitions who were not in fact legal electors residing in said proposed territory are eliminated, and the names of the women who signed the said petitions by writing the initials or the first

names of their husbands are eliminated and the names of persons whose names appear on said petitions which were written on said petitions by some person other than the person whose name appears on said petitions are eliminated, and the duplication of the same name are eliminated from said petitions, said petitions do not contain the names of two-fifths of the legal electors residing in said proposed school district."

It was further alleged there was no enumeration of the legal electors by any legal elector and by him certified under oath to the board of county commissioners of Linn county, wherein the greatest amount of the territory was located, and that sometime after the petitions were filed a number of sheets of paper purporting to be enumerations were filed; that the purported enumerations consisted of separate sheets no one of which contained the names of the total number of legal electors, and in said sheets it was stated under oath the total number of legal electors was 4, in other sheets 7 and in another as many as 166, but that on the sheets appeared more than 175 names, and that no person certified there were more than 175 legal electors, and no legal elector certified under oath as to the total number of legal electors as required by law and that it was impossible to determine from the petitions or enumerations the correct number of legal electors and that the board had no legal enumeration prepared by any one elector by which they could ascertain that two-fifths of the electors had petitioned for the school; that in fact there were 33 electors who did not appear in any of the enumerations, and some who were listed as living in town (La-Cygne) actually voted in the country. It may here be noted there is no allegation that the petitions were not signed by two-fifths of the legal electors residing in the proposed district, nor is there any allegation as to the number of legal electors in the proposed district.

It was further alleged the board of county commissioners caused to be published in two named newspapers a publication notice attempting to describe the territory, the description varying from that contained in some of the petitions and providing for the use of two ballots, one "For said Rural High School," the other "Against said Rural High School"; that the first publication was December 13, 1946, and fixed January 3, 1947, for holding the election; that the first proof of publication in the *LaCygne Journal* stated a publication for only one week but a second proof showing two weeks publication omitted to show the year other than 194—, and that it appeared from the proof of publication that the same was not completed at least 21 days prior to the election; that an election was

held on January 3, 1947, and that printed or typewritten notices were not posted upon the door of each schoolhouse in the proposed district at least 21 days prior to the date of election in that no notice was posted on the schoolhouse in Brooklyn district, and plaintiff does not know as to other schoolhouses; that at the election held January 3, 1947, a majority of persons voting voted in favor of the establishment of the district, and that many persons were permitted to vote under names that were not their true names and under names that were not bona fide legal electors residing within the district. There is no allegation that the right of any person to vote was challenged when he offered to vote or at any other time.

Other allegations are that all petitions, enumerations, orders, returns of election, names of electors, publication notices and other papers were on file in Linn county and were made part of the petition by reference; also that members of the board of education had been elected, had levied an assessment and collected taxes and proposed to levy taxes in succeeding years for the support of the school, and to collect and disburse taxes already collected; that certain taxpayers had paid the tax under protest; that the school district and its officers had no authority to act; that the boundaries of the district were so vague, indefinite and uncertain as to make it impossible to ascertain the exact territory within the district; that the proposal to form and organize the district was not approved by the requisite officials of Miami county nor by the state superintendent of public instruction prior to the circulating, signing and presenting of the petitions, as required by law. At no place in the petition is there any allegation that any official acted fraudulently or corruptly.

The prayer was that the organization of the district be declared illegal and void, and that the district be ousted and barred from exercising corporate power and that the members of the board of education be ousted, and that plaintiff have such other relief as was meet and proper.

The notice of election for the proposed district attached to the petition recites that:

"In compliance with a petition signed by at least two-fifths of the legal electors residing in the territory of the proposed rural high school district, as determined by an enumeration taken for that purpose, the boundaries of which were approved by the county superintendent of public instruction and the board of county commissioners of Linn and Miami Counties, Kansas, it is hereby ordered that

## AN ELECTION

be held . . . (setting a date and describing the boundaries of the proposed district)

"The vote shall be by ballot. On the ballots in favor of the establishment of said rural high school district shall be written the words, 'For said Rural High School District' and on the ballots against the establishment of said rural high school district shall be written, 'Against said Rural High School District.' "

To the amended petition the school district and the members of the board of education demurred on the grounds: (1) That on its face it showed the court had no jurisdiction of the persons of the defendants or of the subject matter; (2) that plaintiff had no legal capacity to sue; (3) that several causes of action were improperly joined; and (4) that facts sufficient to constitute a cause of action were not stated. This demurrer was sustained without specification of any particular ground.

From that ruling the plaintiff gave timely notice of appeal. In what is hereafter said the term appellees refers to the school district and its board of education.

By reason of the generality of the trial court's ruling on the demurrer we shall devote some attention to each ground.

The first ground is that the trial court had no jurisdiction of the persons of the demurring defendants or of the subject matter of the action. Appellees' contention is that suits against public officers for official acts must be brought in the county where those acts are performed and our attention is directed to G. S. 1935, 60-503, *Second,* and to decisions where the question of venue was involved, such as *Clay v. Hoysradt,* 8 Kan. 74; *Trader v. Southwestern Bell Telephone Co.,* 145 Kan. 690, 66 P. 2d 414; *Shawnee County Comm'rs v. Wright,* 147 Kan. 542, 78 P. 2d 44; *Continental Pipe Line Co. v. Cartwright,* 154 Kan. 430, 118 P. 2d 1052; *Evans v. Marsh,* 158 Kan. 43, 145 P. 2d 140; and others cited in the above. The general rule contended for may be conceded, but by reason of the provisions of the statute under which the school district was organized, its application does not follow. While it is true of joint school districts generally that the district is under the jurisdiction of the county superintendent of the county where the main building is located (G. S. 1935, 72-305) and that the director controls litigation for and against the district (G. S. 1947 Supp. 72-1004) and that generally the board of education of a rural high school has the same power as the board of a common school (G. S. 1935, 72-2507), it is also provided

that a joint rural high-school district is under the supervision of that one of the counties in which is the greatest territory (G. S. 1935, 72-3508). Further, it is specifically provided that the rural high school board shall meet at the "high-school building or at such other place as they may agree upon" (G. S. 1935, 72-3506). Under decisions which need not be cited, they may not transact school business outside the district. That they can perform any place within the district seems clear, and that includes a portion of lands in Miami county, and it need not be debated that every act performed by the board has effect in that part of Miami county included within the boundaries of the district. But we need not pursue this particular matter further. A quite analogous situation was considered in *State, ex rel., v. Miley,* 120 Kan. 321, 243 Pac. 262, where it was held:

"In an action to enjoin the state superintendent of public instruction and the county superintendents and the boards of county commissioners of two or more counties from proceeding illegally in the formation of a rural high-school district, the state superintendent of public instruction may be sued with the other defendants in any one of the counties in which some of the defendants may be served and in which the proposed rural high-school district may be situated." (Syl. ¶ 4.)

In view of that decision we are of opinion the trial court did not sustain the demurrer on any claim of lack of jurisdiction.

In our opinion, no space need be devoted to that ground of the demurrer that the plaintiff had no capacity to sue.

Insofar as improper misjoinder of several causes of action is concerned, it is true there are allegations that taxes were illegally levied and that taxpayers had paid the same under protest, but none of them are parties to this action. In our opinion the allegations may be treated as explanatory of the claimed abuse of corporate power rather than as stating a cause of action for the protesting taxpayers.

The principal question is raised by the fourth ground of the demurrer, that is that facts sufficient to constitute a cause of action are not stated.

Before considering the demurrer to the petition we take note of the statutes under which a rural high-school district may be created, and some of our decisions bearing on what may be considered in an action in quo warranto brought by the state to determine its validity. The review made is in the light of the case before us and is not intended to be exhaustive either of the statutes or of the decisions.

Legal electors residing in territory containing not less than sixteen square miles have authority to form a rural high-school district whose boundaries have been approved by the county superintendent of public instruction and by the board of county commissioners of each county in which the proposed district shall be situated (G. S. 1947 Supp. 72-3501). Whenever a petition signed by two-fifths of the legal electors residing in the proposed district, to be determined by an enumeration taken for the purpose of any legal elector and by him certified under oath to the board of county commissioners of the county in which lies the greatest portion of territory of the district, reciting the boundaries of the proposed district and the approvals above noted, shall be presented to the board of county commissioners requesting the board to call a special election to vote on establishing the district, it shall be the duty of the board forthwith to call an election in the proposed district to vote on the establishment thereof. The election shall be governed by the provisions of the general election law when not contrary to the act. Notice of the election shall be given at least twenty-one days prior to the date of the election by posting printed or typewritten notices on the door of each schoolhouse in the proposed district and by publishing the same twice in some newspaper published in each county in which the proposed district lies (G. S. 1947 Supp. 72-3502). In this case the proposed district contains an incorporated city having a population in excess of 500, and it is required that the vote therein shall be separate from the territory without and that a majority is required of those voting within the city and a majority of those voting without (G. S. 1947 Supp. 72-3504).

In *State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 684, in connection with the act for incorporation of cities of the third class by boards of county commissioners, it was held that the authority conferred is jurisdiction which attaches when a petition fair on its face and duly published is filed.

In *State, ex rel., v. Dowling et al.,* 117 Kan. 493, 232 Pac. 615, the action was in quo warranto to determine validity of a joint rural high-school district under a statute, which as amended is that now under consideration. In that action the district court had granted relief to the plaintiff on a petition charging that the boundaries of the district were not clearly defined; that no accurate enumeration was taken and that the requisite sanction of the county superintendent of Decatur and Norton counties and of the board of county

commissioners of Decatur county had not been given. On appeal this court reversed the trial court. For present purposes we are interested only in the following:

"Since there was neither charge of fraud or similar misconduct, the ascertainment of the number of electors in the district and of the sufficiency of the petition for the calling of the election were exclusively the official concern of the county board. This court has repeatedly held that where the determination of the existence of prerequisite facts to authorize official action is vested in a local tribunal, such as a county board or a mayor and city council, its determination is conclusive and is not subject to review except in cases of fraud or similar misconduct or sufficient gravity to vitiate it. (*The State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873; *The State, ex rel., v. City of Harper,* 94 Kan. 478, 146 Pac. 1169; *The State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 684; *The State, ex rel., v. City of Victoria,* 97 Kan. 638, 641, 156 Pac. 705; *The State, ex rel., v. School District,* 113 Kan. 441, 215 Pac. 453. See, also, *Town of Olsburg v. Pottawatomie County,* 113 Kan. 501, 215 Pac. 451.)" (l. c. 496)

and in the court's holding:

"Where the statute confers authority on a board of county commissioners to call an election on the proposition to establish a joint rural high-school district, upon the presentation of a petition signed by two-fifths of the electors of the territory concerned, and upon an enumeration of the electors of such territory taken by a resident elector and certified to the county board by his affidavit, the county board has jurisdiction to determine the sufficiency of the petition and of the enumeration; and where there is neither allegation nor proof of fraud or similar misconduct affecting the official action of the county board its determination that the petition and enumeration were sufficient is conclusive and not subject to judicial review—following *The State, ex rel., v. Holcomb,* 95 Kan. 660, 149 Pac. 688." (Syl. ¶ 2.)

The rule stated has been recognized in subsequent decisions. See e. g., *State v. City of Hutchinson,* 137 Kan. 231, 19 P. 2d 714; *Bukaty v. City of Kansas City,* 137 Kan. 520, 21 P. 2d 399; *State, ex rel., v. City of Walnut,* 166 Kan. 296, 201 P. 2d 635; and cases cited therein.

We also take note that appellees had filed a motion to make more definite and certain and to strike, containing twenty-eight numbered grounds, directed against the original petition. This motion was sustained in eight particulars and denied in all others, and thereafter the appellant filed his amended petition to comply with the court's ruling. Included in the particulars successfully resisted by the appellant was the appellees' effort to have copies of the petitions for organization attached, to have appellant state what signers were not legal electors, what names were written by some other person and without authority, which petition did not

correctly define the proposed boundaries, what names appeared on more than one petition, to set out copies of the enumerations and to state the number of legal electors the plaintiff claimed resided in the district within and without the city of La Cygne, to set forth the names of the thirty-three electors allegedly omitted from the enumerations, to state which enumerations were not properly certified, to attach copies of the orders of the board of county commissioners of Linn county and the returns of the elections and other papers made part of the petition by reference. The motion to strike was directed at many allegations and need not be detailed here.

Appellees direct attention to *Kinderknecht v. Hensley,* 160 Kan. 637, 164 P. 2d 105, where it was said that when timely motions leveled against a petition are resisted by a plaintiff and are overruled, and thereafter the legal sufficiency of the petition is tested by a demurrer, the allegations are no longer entitled to a liberal interpretation but must be strictly construed with the view the plaintiff has pleaded all that he can in his favor, and they argue the petition, in respect to the proper but overruled portions of their motion should be strictly construed. Appellant contends that as no motion was directed to its amended petition the rule is not to be applied. We cannot agree that appellees must file a second motion directed against allegations of the second petition which are the same as those of the first petition which they had unsuccessfully attacked. It is not contemplated under our practice that there be repeated rulings on a matter which has been determined by the first ruling. We shall not pursue each complaint made, but shall consider the allegations of the amended petition in the light of what has been said.

In view of the rule above stated that where the determination of the existence of prerequisite facts to authorize is vested in a local tribunal, here the board of county commissioners of Linn county, and that its determination of those facts is conclusive and not subject to review except in cases of fraud or similar conduct of sufficient gravity to vitiate it, and in view of the fact that there is no specific allegation of fraud or similar conduct, we examine the amended petition only to determine whether, under well pleaded allegations, there was conduct of sufficient gravity to vitiate the proceedings establishing the school district.

There is no doubt but that a petition containing requisite recitals

required by the statute under which action is to be taken must be filed (*Greeley County v. Davis,* 99 Kan. 1, 160 Pac. 581), nor that when a petition fair on its face is presented, jurisdiction to act attaches (*State, ex rel., v. Holcomb,* supra). There is no direct or other allegation of the amended petition that the petition or petitions for the creation of the school district filed with the board of county commissioners of Linn county did not contain the recitals set forth in the statute (G. S. 1947 Supp. 72-3502), but rather the allegations of the amended petition go to the proposition those recitals were not true, primarily a question for determination by the board of county commissioners.

Appellant's complaint that more than one petition was filed is not significant if the petitioners signing the separate petitions were legal electors and the petitions were otherwise adequate (*State v. City of Hutchinson,* 137 Kan. 231, 233, 19 P. 2d 714). Its complaint that women signed the petitions by using the initials or first names of their husbands instead of their own Christian names and that the signatures were not to be counted is contended to be supported by *State, ex rel., v. Dunn,* 118 Kan. 184, 235 Pac. 132, where the real question was whether the signers signed their names as they appeared on the registration books of the city of Emporia. In the instant case registration laws have no application. While signatures of the type complained of were not ordinarily in proper form, the question under the applicable statute was whether a requisite number of legal electors had signed the petitions. In the absence of any allegation to the contrary, we assume the board of county commissioners determined that qualified signers constituted two-fifths of the legal electors of the proposed district. All efforts of the appellees to learn what names appeared on more than one petition, what names on the petitions were written thereon by someone else or the names of signers who it was alleged were not legal electors, were successfully resisted by the appellant. Under the allegations we cannot assume that any given number of signatures were duplicates, nor that any given number of women signed other than their Christian names, nor that any given number had their names signed by another person, nor that any given number who were not legal electors signed the petition. The only allegation is an argumentative one that if all of those above mentioned be excluded, the petitions did not contain the signatures of two-fifths of the legal electors. There is no forthright allegation that two-

fifths of the legal electors did not sign. Appellant also alleged that the petitions did not show approval of the boundaries of the district by the requisite officers before the petitions were filed. It is said this is in utter disregard of the statute. In *State, ex rel., v. School District*, 113 Kan. 441, 215 Pac. 453, a case arising under a statute of which the one presently involved is an amendment, it was held:

"Under the statute providing that a petition for the calling of an election to vote on a proposal to organize a rural high-school district shall recite that the boundaries have been approved by the county superintendent and commissioners, the omission of such recital and the fact that the boundaries were not approved by such officers until after the petition was signed (but were so approved before it was acted upon) are mere irregularities, insufficient to require a court to set aside the attempted organization of the district in an action brought in the name of the state." (Syl. ¶ 2.)

Appellant's complaints that the enumeration was not sufficient seem directed to the fact that there was more than a single enumeration rather than to the fact that all taken together were insufficient. The argument seems to be that one legal elector must have made the entire enumeration and certified it under oath to the county board. While the correctness of that contention may be doubted, the allegations are only that more than one enumeration was filed; that the enumerations do not agree, that one showed 166 legal electors and that there were 33 legal electors whose names did not appear on any one of the enumerations. Our attention is directed to *State, ex rel., v. Van Meter*, 131 Kan. 140, 289 Pac. 399, a case arising under the statute now before us, but wherein the effort was to disorganize a district. Under such circumstances the enumeration was relatively much more vital for the reason that more than fifty percent of the legal electors, as shown by the enumeration, must vote in favor of disorganization before that result may be accomplished (G. S. 1947 Supp. 72-3502), whereas organization is accomplished by the majority vote of those voting (G. S. 1947 Supp. 72-3504). In view of the fact there was no allegation as to the number of legal electors in the proposed district, nor any direct allegations the petitions for organization were not signed by two-fifths of the the legal electors, we feel impelled to hold that any deficiency there may have been in the enumeration must be treated as an irregularity, and that the consideration of the several enumerations and the conclusion of the board of county commissioners that two-fifths of the legal electors signed the petitions for organization of the district cannot be con-

strued as fraud or similar conduct of sufficient gravity that a court should interfere on account thereof.

Appellant's complaints that there were variances in the description of the territory to be included in the proposed district turn on its allegation "that some of the petitions did not accurately recite the boundaries." It successfully resisted a motion to make definite and certain. Inferentially some of the petitions did accurately recite the boundaries. There being no allegation to the contrary we must assume that some of the petitions presented to the board of county commissioners, signed by the requisite number of legal electors, contained an accurate description of the boundaries, which are the same in the original petition, the amended petition and in the published notices of election. A comparison of those boundaries with a map included in appellant's reply brief shows the territory properly defined. In the latter brief are statements of claimed errors in some of the petitions. The claimed variance is that a call to the "SE corner of Sec. 19" is erroneous and that it should have been the southwest corner. If that were all the error would perhaps be important, but it is not all; the full call is from a point not in dispute, "thence due west four and a half miles to the SE Corner of Sec. 19" and later calls show clearly that the distance and not the designation actually meant the "SW corner of Sec. 19," as it appeared in other petitions, and in the published notices of election signed by the board of county commissioners. The rule that in the description of a boundary monuments prevail over courses and distances will not be followed where it would result in destroying the continuity of a line which can be preserved by rejecting an obviously erroneous call. See *State, ex rel., v. School District,* 113 Kan. 441, Syl. ¶ 1, 215 Pac. 453. In view of the fact the election was held, the district was established, and as such has been functioning, we refuse now to hold that the error in some of the petitions was anything more than an irregularity. And certainly it cannot be said that the board's conclusion that the petitions accurately described the real estate was actuated by fraud or constituted conduct of sufficient gravity that it was the equivalent of fraud.

Appellant's contention that the election was not legally held will be noticed briefly. A contention that the description of boundaries in the notices and election varied from the descriptions in the petitions presented to the board of county commissioners is answered by what has been said heretofore. Its contention that twenty-one

days notice was not given is not good. The first publication was December 13, and counting it as the first day of notice there were nineteen days in December and two days in January or twenty-one days notice of the election on January 3. See *State, ex rel., v. Wallace*, 112 Kan. 264, 210 Pac. 348, and *City of Wichita v. Robb*, 163 Kan. 121, 179 P. 2d 937. See, also, *State, ex rel., v. Allen County Comm'rs*, 143 Kan. 898, 57 P. 2d 450, where failure to give notice was held not to warrant judgment for plaintiff. The claimed defect in the proof of publication in the LaCygne Journal needs no comment. There is no allegation that the notice was not actually published for two weeks, the first publication being made on December 13, 1946. The omission in filling a blank, heretofore pointed out, was an irregularity at the most.

The state further contends that the notice of election provided for the use of two ballots and that thus the right of the secrecy of the ballot was destroyed, and our attention is directed to *State, ex rel., v. Metzger*, 26 Kan. 395; *Taylor v. Bleakley*, 55 Kan. 1, 39 Pac. 1045, 49 Am. St. Rep. 233, 28 L. R. A. 683; and *Kansas Utilities Co. v. City of Paola*, 148 Kan. 267, 80 P. 2d 1084; which need not be reviewed as they are not determinative here. The argument is predicated solely on the recitals of the part of the election notice quoted earlier in this opinion. It will be noticed that the election notice does not pretend to set forth the form of the ballot. As heretofore stated, the statute makes the general election law applicable when not contrary to the act. There is no allegation in the amended petition that more than one ballot was given to any elector, nor that the form of the ballot did not comply with the provisions of G. S. 1935, 25-605, and we cannot assume that it did not.

It is also contended the election was void because no notice of election was posted on the door of the schoolhouse in Brooklyn district. The sole argument made is that if notice was not posted on one schoolhouse how many schoolhouses could be missed before failure to post became material. Our attention is directed to *Schur v. School District*, 112 Kan. 421, 210 Pac. 1105, and cases cited therein. Only *State, ex rel., v. Echols*, 41 Kan. 1, 20 Pac. 523, is closely in point, and it was there held:

"The time when such an election shall be held is not designated in the statute, but is to be fixed by the county commissioners, and public notice of the time and purpose of the election is required to be given by publication in a newspaper of the county, and by posting copies of the notice at each of the polling-places in the county at least ten days before the election. *Held*,

That the giving of notice substantially in the manner directed by law is a prerequisite of the validity of such an election, and where there is a failure to post notices at any of the polling-places, and a large number of the electors of the county fail to vote upon the proposition, the election will be void." (Syl. ¶ 2.)

In the amended petition the allegation was that no notice was posted on the schoolhouse in Brooklyn district "and plaintiff does not know the names of the other schoolhouses on the doors of which notices were posted or the date or dates said notices were posted if they were posted on such other schoolhouses." The only inference we can draw is that there were at least two other schoolhouses. There was no allegation the newspaper publications of the election notice were not made, nor any allegation that any number of electors, large or small, failed to vote, nor that any legal elector of the district failed to vote because he had no notice of the election. We are impelled under the circumstances to hold that the mere fact a notice of election was not posted on the door of one of the three or more schoolhouses in the boundaries of the proposed school district did not have the effect of making the subsequently held election void.

And finally in connection with the election we note the allegation that many persons were permitted to vote at the election under names that were not their true names and under names that were not bona fide electors within the district. The appellees' motion the allegation be made more definite and certain was successfully resisted by the appellant. There was no allegation that the vote of any such person was challenged in any manner, nor that the vote of any such allegedly disqualified voter was either in favor of or against the organization of the district. Under the circumstances we cannot conclude the election was a nullity.

We need not comment at any length on the appellees' contention, conceded by the appellant, that in an action in quo warranto the right to the relief sought rests largely in the sound discretion of the court, and is not a matter of right. Those interested will find phases of the matter discussed at length in *State, ex rel., v. Wyandotte County,* 117 Kan. 151, 230 Pac. 531; *State, ex rel., v. Allen County Comm'rs,* supra; *State, ex rel., v. Grenola Rural High School Dist.,* 157 Kan. 614, 142 P. 2d 695; and others mentioned in those just cited. The essence of appellant's argument that the relief sought by it should not be denied on discretionary grounds, is that

all of the facts and circumstances pleaded by it show a studied effort on the part of the appellees to disregard many provisions of the statutes for the organization of the district. As has been demonstrated above, that conclusion cannot be sustained.

The ruling of the trial court on the demurrer to the amended petition is affirmed.

WERTZ, J., not participating.