No. 31,153.

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, Attorney-general, *Plaintiff*, v. THE MAYOR AND BOARD OF COMMISSIONERS OF THE CITY OF HUTCHINSON et al., *Defendants*.

(19 P. 2d 714.)

Opinion filed March 11, 1933.

*Roland Boynton*, attorney-general, *W. C. Ralston*, assistant attorney-general, *Carr W. Taylor*, *C. M. Williams*, *Martin Aelmore* and *Harry H. Dunn*, all of Hutchinson, for the plaintiff.

*Ellis Clark*, city attorney, *A. C. Malloy*, *Roy C. Davis*, *Warren H. White* and *Frank S. Hodge*, all of Hutchinson, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: The purpose of this proceeding is to compel the commissioners of the city of Hutchinson to submit to a vote of the electors of the city a franchise ordinance that they had just passed granting to a gas company the right to maintain and operate a plant or system for the distribution and sale of gas for twenty years to the city and its inhabitants. Petitions purporting to contain the names of 1,123 registered electors were presented asking for a pop-

ular vote on the adoption or rejection of the franchise ordinance which had just been passed by the city commissioners. When action was taken on the petitions the commissioners, by a vote of three to two, decided that the petitions were insufficient and refused to call an election.

Plaintiffs contended that the petitions were sufficient and made application to this court for a writ compelling the city commissioners to submit the question on the ordinance to a vote of the electors, and an alternative writ was allowed. The parties are proceeding on the theory that the alternative writ and return, including the records and unquestioned facts, are sufficient to raise the legal questions which divide the parties, namely, the sufficiency of the petitions to require the submission of the question to a vote of the electors. It appears to be agreed that 706 legal petitioners were required to the submission of the question. It appears, too, that petitions, forty of them, were signed and presented by 1,123 electors of the city, but the defendants found and contend that of the 1,793 signers of the petitions some of them were not qualified electors. Some of the petitions were not duly authenticated, some of the petitions were not verified by a signer of the petitions, and some had no jurats on them and were not verified by qualified electors, and some of them were verified by a person who did sign the petition but was not a qualified voter. Then it appears that a few of the signers withdrew from the petitions, and the commissioners, after deducting the names of signers from the petitions deemed not to be in proper form under the law and not entitled to be counted, decided that only 284 of the signers on the petition could be regarded as legal petitioners, and therefore denied the application for the calling of an election. The petitions were presented under R. S. 13-2801, which, after authorizing the commissioners of the city to grant a franchise to a person, firm or corporation, to manufacture, sell and furnish artificial or natural gas, light and heat, electric light, power, or steam, provided, among other things, that—

"If, at said special election, the majority of votes cast shall be for said ordinance and the making of said grant, the same shall thereupon become effective; but if a majority of the votes cast at said special election shall be against the said ordinance and the making of said grant, said ordinance shall not confer any rights, powers or privileges of any kind whatsoever upon the applicants therefor, but shall be, *ipso facto,* absolutely null and void."

The mayor and board of city commissioners enacted an ordinance

on August 5, 1932, granting a gas franchise to the Hutchinson Gas Company, to furnish and market gas upon a schedule of rates prescribed for the period of twenty years. This company had been furnishing gas to the people of the city for some time, but its franchise had expired. The ordinance had been duly published, but within the time before it became effective petitions were filed with the city clerk asking the city commissioners to submit the question of the adoption or rejection of the ordinance to a vote of the electors of the city. Petitions were presented from sections of the city, forty in number, purporting to contain 1,793 names of petitioners, which were presented to the commissioners on September 12, 1932. It is agreed that 7,060 votes had been cast for mayor at the last preceding election, and ten per cent of that number, namely, 706 petitioners who were legal electors, were required for the calling of the special election. Examination of the petitions was begun by the city clerk and city attorney, under the direction of the mayor. On the first count by the city clerk he found 1,123 qualified electors had signed the petitions, and for several reasons the city attorney advised the clerk that many of the names found there could not be counted because of defects in the petition, one of which was they were not verified by those circulating the petitions, and that deducting these names and also names of others who had withdrawn from the petition, his opinon was that only 284 legal petitioners could be counted as favoring the election. On October 14, 1932, the commissioners found by a vote of three to two that the petitions for calling an election were not sufficient, and this action followed.

Motions by respondent to strike certain matters stated in the alternative writ, and also by plaintiff to strike certain allegations from the return of respondents to the writ, with a demurrer to the averments in the return to the writ, but these are not deemed to be material to the determination of the question submitted at this time. No testimony has been taken on the issues, and we have only the allegations in the alternative writ, including the exhibits set out by the relator and the return made to it by the respondents. We are asked at this stage of the proceeding to determine questions of law raised and discussed on the pleadings.

An objection is suggested that there were forty separate petitions when only one is contemplated, but we think that is of no special significance if the petitioners signing these separate papers were qualified voters and adequately expressed their request.

Another question much discussed is the effect of the finding of the commissioners that the petitions were insufficient as not being in conformity to the requirements of the statute, and the petitions did not contain the requisite number of legal voters to warrant the calling of an election. It may be stated that it was not the function of the city clerk to finally decide the question submitted to the commissioners. While the commissioners may rightly call to their aid the services of the clerk and of others to make an examination of the petitions and the election rolls in order to ascertain the number of qualified electors and to find whether those signing the petitions were qualified electors, the decision is ultimately with the commissioners.

As we have seen, the commissioners have expressly and formally found and declared that the petitions were insufficient to require the calling of the election. Was the finding and determination of the duly constituted commission of binding and conclusive force, or may there be a resort to the court to retry the issues of fact? Under what is deemed to be the settled law of this state, the decision of such a commission is final and conclusive in the absence of fraud or corruption or misconduct that is the equivalent of fraud. The court may not interfere with their decision because of a mere mistake or error of judgment on the part of the commission in reaching a decision. In *State, ex rel., v. Electric Power Co.*, 116 Kan. 70, 226 Pac. 254, a city commission was presented a petition asking for a referendum election on the adoption or rejection of a franchise ordinance, and the petition was held to be insufficient, whereupon the call was refused. The controversy involved the question whether the finding of the commission was conclusive and beyond the interference of the courts, and it was held:

"Apart from the insufficiency of the evidence there is the finding and decision of the city commission that ten per cent of the legal electors had not signed the petition. To that commission the legislature has committed the authority to ascertain and determine the sufficiency of the petitions and whether those signing them constituted ten per cent of the legal electors of the city. This power and discretion is to be exercised by this tribunal unhampered by judicial interference, unless it is shown that the act is without jurisdiction or there was fraud or some misconduct which is the substantial equivalent of fraud. Nothing approaching fraud in its action was shown or attempted to be shown. In the absence of evidence to the contrary it must be presumed that the commission acted honestly and in accordance with law, and its determination on the question submitted to it is binding alike on all parties and conclusive upon the courts." (Citing a number of cases.) (p. 73.)

In *Williams v. City of Topeka*, 85 Kan. 857, 119 Pac. 864, where the question was raised as to the effect of a decision by the city commission as to which of several parties was the lowest bidder on the letting of a paving contract, the question was upon whom the responsibility rested for the ultimate decision of the question, and the court remarked:

"The next inquiry is how this responsibility is to be determined. Here, again, the authorities speak with practically one voice. The governing body of the city, the mayor and council or commissioners as the case may be, must determine the fact, and such determination cannot be set aside unless the action of the tribunal is arbitrary, oppressive or fraudulent." (p. 863.)

In another case where a petition was presented to a board of county commissioners for the organization of a city, the sufficiency of the petition was challenged and likewise the validity of the decision made by the board. In the opinion it was said:

"We have, therefore, a case in which the legislature has committed to the board of county commissioners, moved to action by the presentation of a petition, authority to ascertain the existence of certain conditions, pass upon the reasonableness of the prayer of the petition, make an order effecting incorporation, and call an election to perfect corporate · organization. The action of the board in satisfying itself and finding · that a majority of the taxable inhabitants favor incorporation and that the number of inhabitants exceeds two hundred, considered alone, might be said to be judicial. The finding that the prayer of the petition is reasonable is not so. The satisfaction of the board respecting that matter is the satisfaction of a legislative body. In one sense the declaration of incorporation on the basis of findings made is ministerial. But the proceeding cannot be split up in this way. It is political and legislative in character, no review of the action of the board of county commissioners is provided for, and the courts have no authority to interfere unless for want of jurisdiction, fraud, misconduct, or other cause vitiating the integrity of the proceeding." (*The State, ex rel., v. ·Holcomb*, 95 Kan. 660, 663, 149 Pac. 684.)

In *Stevenson v. Shawnee County*, 98 Kan. 671, 159 Pac. 5, where a petition was presented to the county commissioners for the improvement of a road, it was contended that the board decided the sufficiency of the same without investigation and found that the requisite number of legal petitioners had signed the petition. The court decided the case reiterating the prevailing rule that—

"In the absence of fraud, corruption or other misconduct the substantial equivalent of fraud, the findings of the board of county commissioners are conclusive on the courts." (p. 676.)

In *State, ex rel., v. Jacobs*, 135 Kan. 513, 11 P. 2d 739, an original

proceeding was brought in this court to compel the city commissioners to submit to a referendum of the voters an ordinance passed by the commission condemning and appropriating land for the purpose of widening an avenue of the city, based upon a petition which had been presented. The petition for the referendum was presented and denied. Again it was held that in the absence of fraud or misconduct, the finding and decision of the city authorities are conclusive, and that the power vested in them was to be exercised unhampered by judicial interference. See, also, *Meffert v. Medical Board*, 66 Kan. 710, 72 Pac. 247; *People v. Town of Loyalton*, 147 Cal. 774; *State, ex inf., v. Fleming*, 158 Mo. 558.

All the authorities cited show, and it is conceded, that if fraud or its equivalent exists and is established by evidence, the findings and decision of the commissioners may be set aside by the courts. Respondents are contending that the existence of fraud is not in the case and is not to be derived from the allegations of the alternative writ and not admitted in the return to the writ. Was fraud charged by the plaintiff? If it is alleged and relied on by plaintiff and not conceded by the respondent, it must be established by proof and, therefore, final disposition of the case cannot be made at this stage of the proceeding. Both parties state that if it be an issue in the case that they desire and are ready to try out that question of fact before a commissioner appointed by the court.

The allegations of the plaintiff on this phase of the controversy, after alleging the passage of the ordinance and the presentation of petitions asking for a vote of the electors on its adoption or rejection, stated that the commissioners neglected to take up or act on the petitions from the time of filing the same on September 12, 1932, until October 14, 1932, and—

"That the said mayor and board of commissioners of the city did arbitrarily and without legal cause or excuse, fail, neglect, and refuse to approve said petitions and the signatures thereto, but that said mayor and commissioners of the city of Hutchinson, Kansas, the defendants herein, permitted said petition to lie dormant until on the 14th day of October, 1932, and said mayor and city commissioners did find that there were 1,123 qualified voters signing said petition, and upon said finding, and for the reason set forth in the minutes of the meeting of mayor and board of city commissioners of October 14, 1932, and for no other reason the mayor and commissioners did make a purported finding that said petitions were not sufficient, and by motion rejected same."

Reference is then made to an exhibit presented to the commission in which the city clerk, to whom the matter was assigned for examination, made a report in which he stated that the total number of petitions was forty and the total number of qualified voters signing petitions was 1,123, and another exhibit in which a letter of the mayor was written to the clerk in which he said:

"I, therefore, hereby instruct you to throw out anything which raises the slightest question of doubt in your mind, which means that you will simply certify as to those on which there is no question."

Another exhibit is a letter of the city attorney on October 6, 1932, stating that:

"I understand there are some discrepancies and possible illegalities in the petitions presented to you, calling for an election on the gas franchise proposition.

"I have not had time nor opportunity to check into these matters to determine their correct status, and I would appreciate it if you would hold up certification of these petitions until I have had a chance to determine what petitions are and what are not correct according to law."

Another exhibit is a letter written by the city attorney to the clerk on October 14, 1932, stating that the clerk had advised him that the count on the petition showed:

"Total number of signers.................................. 1,793
Total number of petitions................................ 40
Total number of qualified voters signing petitions......... 1,123"

Also, stating total number of unqualified voters signing petitions, 667; total number of undiscernible names, 3; total number of qualified voters signing petitions on which the person verifying the petition did not sign it, 731; and he further said there are a number of immaterial items in the report, "The 731 names on the petitions in which the verifier did not sign the petition should be stricken off," and he spoke of other defects in verification, and he added: "This would leave a total of 284 names on petitions of qualified voters which were proper, as to form and content."

Plaintiff alleges that notwithstanding the finding and report of the city clerk showing 417 more signers than were required, the respondents arbitrarily refuse to call an election—

"And that the acts of said mayor and city commissioners in refusing to promptly perform their duties, and determine the legality and sufficiency of said petitions as soon as possible, and in acting in such arbitrary manner, they did thereby neglect and refuse to perform their duties and as provided by law,

and said mayor and city commissioners do still refuse to call said election, notwithstanding the fact that said petition did contain the names of more than ten per cent of legally qualified voters."

## Later in the pleading it is said:

"That said city commissioners, without legal cause, or excuse, and acting arbitrarily and not in good faith, did unlawfully throw out one document on which a total of 731 voters and electors had signed their names on the various papers of same, and which papers were attached together and filed, with the city clerk, as one document, but your relator is informed, believes, and therefore alleges that the various pages and sheets of said document were separated and torn apart in the city clerk's office, and after same was filed; and that said mayor and city commission failed and refused to consider same or canvass the same or to perform its duty to said city and to the qualified electors, signed thereon, and all of the electors of the city of Hutchinson, all of which acts on the part of said mayor and board of commissioners was and is arbitrary, wrongful, illegal and oppressive, was not done in good faith, and constituted a wrong and injury to said qualified electors."

## There is a further allegation—

"That on the 7th day of October, 1932, at a regular meeting of the board of city commissioners of the city of Hutchinson, a request was made by the commissioner of public utilities of the city of Hutchinson, Kansas, asking that said referendum petitions filed, be approved and be found sufficient and a determination of same be made at that time, but that the said mayor and the majority of the city commissioners of the city of Hutchinson, Kansas, acting together and for the purpose of aiding the Hutchinson Gas Company, a corporation, the grantee of said franchise ordinance No. 2190, at that time refused to act on said petition or to determine the legality and sufficiency thereof, until after the sixty days intervening time, provided by law, had passed by, and at said time did postpone taking any action on same, until the 14th day of October, 1932, a copy of which resolution, presented by Carr W. Taylor, the commissioner of public utilities, is hereto attached marked 'Exhibit G,' and made a part hereof, at which time the mayor and the majority of the board of commissioners arbitrarily and without legal cause or excuse, and in violation of its duty and in disregard of the rights of the qualified voters of the city of Hutchinson, Kansas, and particularly those who signed said petition, asking for submission to a vote, of said ordinance No. 2190, did refuse to sustain said petition or to call the election."

In respondents' return they took cognizance of these charges of bad faith and arbitrary action and met the issue so presented by alleging that they—

"Specifically deny that they or any of them acted arbitrarily or in bad faith at any time in connection with the matters and things set forth in the writ, but on the contrary allege that they acted at all times in good faith and with honest motives," etc.

While the charges of bad faith and arbitrary conduct of the commissioners are not stated in much detail, they appear to be sufficient to raise the issue in their determination. It is stated in effect that the city clerk, to whom was given the task of examining the petitions and finding the number of legal electors who had petitioned for the calling of an election, found that it contained 417 names in excess of the required number, and that the majority of the commissioners arbitrarily and in bad faith refused to perform their duty to fairly declare the result and to issue the call; that they arbitrarily and not in good faith ignored and threw out a large number of legal electors who had signed the petition which were identified, and that this was wrongful, illegal and oppressive, and further that it was done to aid and protect the Hutchinson Gas Company, to which the franchise had been granted by the commission, and was done in violation of its duty and in disregard of the rights of the signing electors. These averments cannot be ignored and we think are sufficient to raise the question of misconduct and bad faith. The respondents joined issue on this charge by specific denials, and hence the case cannot be finally determined until the issue is settled by proof. Of course, the party alleging misconduct and bad faith has the burden of proving the charges, and if established by the evidence the court may rightly interfere and adjudge the effect as to the fraudulent action and inaction of the commissioners. Only questions of law can be determined at this hearing, and the issue of fact cannot be determined until that question is tried out. It follows that the demurrer to the alternative writ must be overruled, but final judgment cannot be rendered until the question is determined whether or not the decision of the commission was arbitrary and fraudulent. It is so ordered.