No. 37,180

The State of Kansas, ex rel. Barnes Griffith, County Attorney of Crawford County, *Plaintiff,* v. The City of Walnut, Gus Kalbe, as Mayor, Dr. J. W. Moore, Howard Plum, Virgil Pryor, Ben Reissig, and Paul Smith, as members of the Council of the City of Walnut, *Defendants.*

(193 P. 2d 172)

Opinion filed May 8, 1948.

*Joe F. Balch,* of Chanute, argued the cause, and *Edward F. Arn,* attorney general, *H. R. Fatzer,* assistant attorney general, and *Barnes Griffith,* of Pittsburg, were with him on the brief for the plaintiff.

*George F. Beezley,* of Girard, argued the cause and was on the brief for the defendants.

The opinion of the court was delivered by

Hoch, J.: This is an original proceeding in mandamus to require

the submission to a popular vote, under the provisions of G. S. 1947 Supp. 12-2001, of a municipal ordinance granting an electric-light franchise. The issue is here on a motion by the defendant city to quash an alternative writ previously allowed.

Omitting formal averments, the motion for the writ alleges that on July 14, 1947, the city officials of Walnut, Kan., adopted an ordinance granting to O'Brien and McClung, doing business as the Walnut Gas and Electric Company, a twenty-year franchise for the construction and operation of an electric-light plant; that

". . . on September 8, 1947, pursuant to the provisions of 12-2001, G. S. Kansas, 1945 Supplement, Ike Smith and 101 other legally qualified voters of the City of Walnut, Kansas, presented a petition to said Governing Body of the City of Walnut, requesting that said Ordinance No. 132 of the City of Walnut be submitted to the popular vote of the legally qualified voters of the City of Walnut, Kansas, on the question of its adoption, which petition remained so filed on September 12, 1947, being sixty days from the date of final passage of said ordinance; and that a true and correct copy of said petition is hereto attached, marked Exhibit B, and made a part hereof.

"6.

"That there were 276 votes cast for the office of Mayor of the City of Walnut, Kansas, at the last city election, on April 1, 1947.

"7.

"That notwithstanding the presentation of said petition to said governing body, bearing the signatures of far in excess of twenty per cent of the legally qualified voters of said city of Walnut voting for Mayor at the last preceding city election, said governing body arbitrarily, and without jurisdiction, on September 22, 1947, declared said petition to be insufficient and further declared said Ordinance to be in full force and effect.

"8.

"That notwithstanding the presentation of said petition to said governing body bearing the signatures of far in excess of twenty per cent of the legally qualified voters of said City of Walnut voting for mayor at the last preceding city election, said governing body arbitrarily, and without jurisdiction, failed to notify in writing the said W. F. O'Brien and Clell McClung, doing business as the Walnut Gas and Electric Company, applicants for said franchise, of the filing of said petition and of its sufficiency and of the amount necessary for the entire expense of the election prayed for by said petition, all as provided by 12-2001, G. S. Kansas, 1945 Supplement.

"9.

"That plaintiff herein has no adequate remedy at law and no full, adequate and complete remedy other than such as prayed for herein."

Plaintiff prayed for an alternative writ requiring the defendants

to give the notice required by the statute, leading to a referendum vote on the ordinance. The ordinance and the petition referred to were attached and made a part of the motion.

On January 3, 1948, an alternative writ was allowed by a justice of this court directing the defendants to take the statutory action prayed for, or that they appear before this court on January 26, 1948, and show cause why they should not do so. Thereafter defendants moved to quash the alternative writ on the grounds that it failed to show facts entitling the plaintiff to the relief sought, and that it did not state facts sufficient to constitute a cause of action. This appeal followed.

The statute before us (G. S. 1947 Supp., 12-2001) deals with the granting of municipal franchises for the construction and operation of certain public utilities including electric-light plants. Under its provisions, the ordinance granting the franchise does not take effect until after the expiration of sixty days from the date of its final passage, and

"If, pending the passage of any such ordinance or during the time intervening between its final passage and the expiration of sixty days before such ordinance shall take effect, twenty percent of the legally qualified voters of such city voting for mayor, or in case no mayor is elected then the commissioner or council member receiving the highest number of votes, at the last preceding city election shall present a petition to the governing body asking that such franchise ordinance be submitted for adoption to popular vote, then it shall be the duty of the mayor of such city to issue a proclamation calling a special election for such purpose."

The principal contentions of the defendants are, first, that the petition for a referendum vote on the ordinance was invalid because it was not verified; second, that the mere presentation of the petition for referendum vote did not require the calling of an election, and that the city officials had the power and the duty first to pass upon the sufficiency of the petition; third, that the petition for the writ does not allege acts constituting arbitrary or fraudulent action on the part of the defendants and, therefore, fails to state a cause of action.

It must first be noted that the issue is before us not upon a return or answer to the petition for the writ, but on a motion to quash. A motion to quash being tantamount to a demurrer (*State, ex rel., v. Brooks,* 160 Kan. 526, 163 P. 2d 414; *Citizens Utilities Co. v. City of Goodland,* 146 Kan. 172, 69 P. 2d 318, and cases there cited), all facts well pleaded in the alternative writ, which includes those of

the motion for the writ must, for present purposes, be accepted as true.

We will first consider defendants' second and third contentions. It is urged that upon presentation of the petition for a referendum vote upon the ordinance, the city officials had both the power and the duty to determine whether it bore the signatures of twenty percent of the legally qualified voters. The motion for the writ alleges that the petition, copy of which was attached, contained the names of 102 legally qualified voters of the city of Walnut asking that the ordinance be submitted to a popular vote as provided in section 12-2001; that there were 276 votes cast for the office of mayor of the city of Walnut at the preceding city election; that, notwithstanding the petition bore the signatures much in excess of the twenty percent of such legally qualified voters, the city officials declared the petition insufficient and, arbitrarily and without jurisdiction, failed to take the action, required by the statute, leading toward a referendum vote upon the ordinance. These allegations are not challenged by answer. For present purposes, the allegation stands that the petition was signed by more than twenty percent of the legally qualified voters, determined in the manner provided in the statute.

In support of their contentions, the defendants cite *State, ex rel., v. Dunn,* 118 Kan. 184, 235 Pac. 132, and *State v. City of Hutchinson,* 137 Kan. 231, 19 P. 2d 714. The cases might be in point if the issue were here upon return or answer to the petition for the writ. In the Dunn case, *supra,* it was held that the board of commissioners had no authority to call an election unless the petition contained the requisite number of qualified electors and they were bound to examine it to see that it did so, before calling the election. Similarly, in the city of Hutchinson case, *supra,* it was said when a petition of the electors was presented asking that an election be called as to the question of adoption or rejection of the ordinance, the commission has the function of determining whether the petition has the required number of signers and that its determination is binding upon the parties and upon the courts unless it is shown that the commission, in its determination, was guilty of fraud or some misconduct substantially equivalent to fraud. But we do not here reach such a question. The petition for the writ alleges 102 qualified electors, which is substantially in excess of twenty percent of the legally qualified voters, as determined under the allegations of the writ by the vote cast for mayor at the preceding city election.

If the petition for the referendum did, in fact, contain the requisite number of qualified signers, it was the duty of the city officials to call the election, and failure to do so would in itself constitute arbitrary or fraudulent action.

There remains for consideration defendants' first contention that the petition was invalid because it was not verified. It is conceded that the instant statute, G. S. 1947 Supp., 12-2001, has no provision requiring verification. The defendants, however, invoking the rule that statutes in *pari materia* are to be construed together, contend that we should carry over into section 12-2001 the requirement of verification contained in some other statutes, particularly G. S. 1935, 12-107, which deal with questions of "initiative, referendum and recall." They argue that our various statutes providing for popular initiative, referendum or recall in city matters have such an intimate relationship to each other that they should be considered as an integrated or closely united body of law, their one general idea being to afford the voters an opportunity to directly control the acts of their officers. Upon this premise they contend that since the petition for the election, made a part of the alternative writ, shows that it was not verified, the motion to quash should be sustained.

It is indeed a well-established rule of statutory construction that statutes in *pari materia* are to be compared with each other and construed together. It has frequently been said that the object of this rule is to ascertain and effectuate the legislative intent. (50 Am. Jur. 345; 59 C. J. 1048.) Obviously, the rule is only applicable in the construction of statutes relating to the same subject. Moreover, the rule is to be invoked only where there is some ambiguity in the statute or some doubt as to the legislative intent. In 50 Am. Jur. 345, it is said:

"Moreover, as in the case of all other rules of statutory construction, the necessity of applying the rule as to the construction of statutes in *pari materia* exists only where the terms of the statute to be construed are ambiguous, or its significance doubtful. Statutes in *pari materia* may not be resorted to to control the clear language of the statute under consideration."

A similar statement in 59 C. J. 1050 is as follows:

"It must not be overlooked that the rule requiring statutes in *pari materia* to be construed together is only a rule of construction to be applied as an aid in determining the meaning of a doubtful statute, and that it cannot be invoked where the language of a statute is clear and unambiguous."

It is true that we have a number of statutes providing for popular

vote on various city matters. Some of them require verification of the petitions and some do not. The plaintiff calls attention to a number of such statutes which have no provision for verification. For instance, G. S. 1935, 12-302, which relates to the calling of an election upon petition signed by not less than ten percent of the legally qualified electors to determine whether two cities adjacent to each other shall consolidate, has no provision for verification of the petition. The same is true as to G. S. 1935, 12-657, which relates to a hearing upon a petition for street-lighting installations, in certain instances; as to G. S. 1935, 12-824, which provides for popular vote, upon petition, upon a franchise to operate interurban railways; as to G. S. 1935, 13-1011, which provides for the making of certain street and alley improvements unless protested by more than one-half of the "resident owners" of the property to be taxed therefor. Whether, in any particular case involving these or other statutes which do not specifically require verification of the petition it might be held, under the doctrine of *pari materia,* that verification is required, we do not, of course, now express any opinion. The above statutes are cited only for the purpose of indicating that in some cases the legislature has provided for verification and in some it has not.

The defendants lay particular stress upon G. S. 1935, 12-107, which is a general statute dealing with the subject of *initiation* of ordinances by petition of electors. Under the specific provisions of that statute, verification of the petitions is required and the manner of verification is set forth. The statute was enacted in 1925 (Laws 1925, ch. 99, § 1), and amended in 1927 (Laws 1927, ch. 104, § 1). It is not necessary to extend this opinion by tracing in detail the legislative history of this and other statutes dealing with action by city officials upon petition of electors or property owners. The statute here involved (G. S. 1947 Supp., 12-2001) was enacted in 1945 and has its source in G. S. 1935, 12-841, 13-1201 to 13-1204, 13-2801 and 14-1701, and Laws 1941, ch. 135, § 1. Its provision for filing of a petition for referendum vote upon the ordinance derives from G. S. 1935, 12-841, which, in turn, traces back to the original statute of 1903 (Laws 1903, ch. 136, § 1). While G. S. 1935, 12-841, differed as to the percentage of qualified electors needed in order to secure a referendum vote, its main provisions were substantially like those in the present statute. It had no provision requiring verification.

The defendants also refer to several other statutes where verification is required such as G. S. 1935, 13-1705, which provides for nomination by primary of candidates for city offices, and to G. S. 1935, 13-1711, which provides procedure for the removal of elective officers.

The defendants also lean heavily upon the case of *State, ex rel., v. Dunn,* supra, which, it is urged, presented an analogous situation. The petitions in that case were to secure submission of the question of abandoning the city manager form of government in Wichita. The question of verification was one among a number of questions considered. The petition consisted of 298 separate sheets and was verified, but each sheet was not separately verified. It was said in the opinion that such verification did not comply with the requirements of G. S. 1935, 13-1711, which requires that "each paper" be separately verified. Section 13-1711 is a statute providing the procedure for the removal of elective officers. No reason was stated in the opinion for regarding it as applicable to the statute relating to abandonment of the city form of government. Nor was there any discussion in the opinion of the doctrine of *pari materia* in the construction of statutes. It does not appear that any question had been raised as to whether provisions of 13-1711 were applicable. In any event, the case did not deal with the instant statute, and is not controlling here.

We are unable to agree with defendants' view that section 12-2001, here examined, constitutes, together with the statutes, including G. S. 1935, 12-107, which require verification, such an integrated system of law dealing with the same subject as to require us to read into it a provision for verification of the petition. It is not ambiguous and we find nothing uncertain about it. It deals with a particular subject and that alone. We find nothing in it to indicate a legislative intent that it should be supplemented by supplying, from some other statute, a requirement that the petitions must be verified. To do so, we must conclude, would be an invasion of the legislative function.

The motion to quash is overruled and the defendants are given until June 1, 1948, to file an answer herein.