No. 44,425

A. STANEART GRAHAM, *Appellant*, v. NELSON O. CORPORON, MERRITT L. CALDWELL, O. GENE BICKNELL and DICK A. BUTLER, Members of the City Commission of the City of Pittsburg; JERRY M. SMITH, City Manager of such City; THE CITY OF PITTSBURG, a Municipal Corporation, *Appellees.*

(413 P. 2d 110)

Opinion filed April 9, 1966.

*Simeon Webb,* of Pittsburg, argued the cause and was on the briefs for appellant.

*Charles H. Menghini,* of Pittsburg, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

FATZER, J.: The plaintiff-appellant, A. Staneart Graham, commenced this action pursuant to K. S. A. 60-907, on his own behalf and on behalf of all other taxpayers of the city of Pittsburg, Kansas, to enjoin the commissioners of the city from proceeding with certain street improvements without submitting the question to a popular vote, pursuant to K. S. A. 12-688.

It is unnecessary to summarize the plaintiff's petition or the city commissioners' answer since the facts disclosed in those pleadings are not in dispute. The city commission moved to dismiss the petition for failure to state a claim upon which relief could be granted. In accordance with K. S. A. 60-212 (*b*), the motion was treated as one for summary judgment (K. S. A. 60-256), and the district court, relying upon the rationale of *State, ex rel., v. Dunn,* 118 Kan. 184, 235 Pac. 132, in a memorandum opinion, sustained the motion for summary judgment.

The facts pertinent to this lawsuit are summarized: On May 18, 1965, the city governing body adopted Resolution No. 173 for the improvement of Joplin Street in the amount of $215,000, and Resolution No. 174 for the improvement of Walnut Street in the amount of $325,000, and they were duly published in the official city paper. The resolutions were adopted pursuant to K. S. A. 12-688 which authorizes such improvements, and permits not less than ten percent of the electors who voted at the last preceding regular city election to file a protest requiring the city governing body to call an election to determine whether the street improvements should be made.

Acting pursuant to K. S. A. 12-688, the plaintiff and 860 other qualified electors of the city of Pittsburg timely filed twelve protest petitions composed of 42 separate sheets of paper, with the city clerk. Each petition contained not less than three separate sheets which were stapled together, making one complete document. The first sheet of each petition contained a typewritten or printed form of heading which recited in substance that the undersigned, a qualified elector of the city of Pittsburg, protested Resolutions Nos.

173 and 174 approved by the city governing body on May 18, 1965, and requested that an election be called to determine whether the street improvements should be made, all as provided by K. S. A. 12-688. Following the heading, appropriate space was provided for the signatures of electors to sign their names and the street and number of his or her place of residence. Each sheet of paper between the first and last sheets of each petition contained space only for the signatures of qualified electors and the street and number of their place of residence. The last sheet contained space for the signatures of electors and their place of residence and near the bottom was an appropriate typewritten or printed form of verification, which complied with the statute. In other words, the last sheet of each petition contained the only form of verification. When filed with the city clerk, each petition was verified on the form provided by the person who circulated it and procured the signatures to the various sheets of the petition, before an officer competent to administer oaths, stating that he was a duly qualified elector of the city of Pittsburg and was one of the signers of the petition; that the statements made in the petition were true, and that "each signature to this paper is the genuine signature of the person whose name it purports to be."

At the direction of the city commission, the city clerk checked the names appearing upon the petitions against the registration books of the city, and found there were 664 names of qualified electors appearing on the petitions whose names and residences corresponded with the registration books, and that such persons were qualified electors of the city. Thereafter, the city commission examined the petitions and concluded they were insufficient to call a special election because each sheet of the several petitions was not verified by a signer of the particular sheet on which his or her name appeared, stating that each signature thereon was the genuine signature of the person whose name it purported to be.

Based upon the foregoing standard, the city commission determined that only 178 valid names of qualified electors were affixed to the petitions; that the protests were in fact insufficient since the names of 332 qualified electors, or ten percent of the 3315 electors who voted at the last preceding regular city election, were required to call a special election and, accordingly, denied the petitions and determined that no special election be called.

When the issue presented is laid bare, its solution lies in the proper construction of K. S. A. 12-688. There is no dispute as to

the facts, and the appellees candidly concede that the protest petitions were sufficient to call an election were if not for the verification clause in the statute. The statute, after providing for the improvement of any main trafficway or trafficway connection by resolution of the city governing body, describing in general terms the improvement to be made and stating the estimated cost thereof, reads, in part:

"The resolution shall be published for six (6) consecutive days in the official city paper if such paper is a daily paper or once each week for two (2) consecutive weeks if a such paper is not a daily paper. If within thirty (30) days after the last publication of said resolution there shall be filed in the office of the city clerk, not later than five (5) p. m. on the last day, a protest signed by qualified electors equal in number to not less than ten percent (10%) of the electors who voted at the last preceding regular city election as shown by the poll books, an election shall be called and held within ninety (90) days after the last publication of the resolution or at the next regular city election if held within that time.

"The signatures to the protest need not all be appended to one (1) paper, but each signer shall add to his signature his place of residence, giving the street and number (if there are street numbers). One of the signers of each such paper shall make oath before an officer competent to administer oaths that each such signature to the paper appended is the genuine signature of the person whose name it purports to be. . . ."

The plaintiff principally contends the statute clearly states that the signatures to the protest need not all be appended to *one paper* but that one of the signers of *each such paper* shall make an oath before an official competent to administer oaths, that *each signature to the paper* appended is the genuine signature of the person whose name it purports to be. He directs our attention to the fact that the word *paper* is used, not sheets, or sheets of paper, but only the word "paper," and argues the statute does not say each sheet shall be verified, but provides that only the "paper," which may be composed of several sheets stapled together, shall be sworn to by one of the signers thereof. He then directs our attention to the definition of "paper" in Webster's International Dictionary and in Black's Law Dictionary, and concludes that it is clear from those definitions that the word "paper," as used in the statute, does not mean sheets of paper but is used synonymously with the word "document" or "instrument."

The appellees concede that the word "paper," standing alone, may be used to mean either a sheet of paper or many sheets of paper fastened together, but urge that the purpose of legislation is not discovered by an examination of one sentence, or one section, but

by a comparison of all the pertinent provisions, and construing them in the light of the purpose to be accomplished. They argue that when the paragraph of the statute dealing with verification is read as a whole, the legislature used the word "paper" in its singular sense, that is, a piece or sheet of paper, and as thus construed, the statute means that the signers to the protest need not all be appended or attached to one sheet of paper, but that one of the signers of each such sheet of paper shall make oath that each signature to the sheet of paper so attached, is the genuine signature of the person whose name it purports to be. In other words, the appellees read the word "paper" as a "sheet of paper" and not as a "document" or "instrument," as the plaintiff contends, and urge the statute requires that the person who verifies a "sheet" of a protest shall be a signer of that sheet, and that names on sheets not so verified may not be counted by the city commission in determining the sufficiency of the petitions to call an election.

The crux of this lawsuit is the meaning to be ascribed to the word "paper." The word is not a technical one, and we think the legislature used it according to its approved usage. The statute provides that "a protest signed by qualified electors" of the number specified shall require the calling of an election, and that more than one "paper" may contain the signatures to the protest, which shall be verified by one of the signers of "each such paper" in the manner required. It is a matter of common knowledge in this state that signatures of electors to a written protest are secured by the circulation of one or more petitions throughout the city. Generally, such a petition is composed of more than one sheet of paper which are stapled or fastened together. The first sheet contains a heading or statement of the grounds for the protest and a request that an election be called. Thereunder, space is provided for the "signature" and "residence" of the electors signing the petition, which continues over onto other sheets for the same purpose. Where verification is required, the last sheet contains the form of verification to be executed. When the requisite number of qualified electors have signed the written protest, the petition is verified by the person circulating it and it is filed with the proper city official.

The legislature doubtless contemplated that a paper of the character authorized by the statute would be circulated by an interested elector who would see each person sign it and would be in a position to make oath that each signer to the paper was the genuine signature of the person whose name it purported to be. The statute

makes no requirement, as the appellees contend, that each "sheet" of "each such paper" shall be verified. In requiring verification, the legislature sought to provide evidence or proof that all signatures were genuine and prevent the fraudulent procurement of names of signers to the protest. To sustain the appellees' contention that each sheet of a protest paper must be verified by a signer of that sheet, would tend to deprive the verification of its value and put a premium upon a reckless oath. This necessarily follows since, to permit the verification by a signer of a particular sheet, who did not personally see other persons sign that sheet so as to know that the signatures thereon were genuine, would thwart both the literal meaning and the plain purpose of the statute.

We think it must be said the legislature did not use the word "paper" in the sense of "sheet," but, rather, used it in the sense of a written document, such as a petition. This conclusion is evident from the definition of the word "paper" and from a practical consideration of the statute itself. Webster's New International Dictionary, Second Edition, unabridged, defines "paper" as follows:

"5. A printed or written document or instrument; a writing, as a bill, note, or essay; as, a *paper* read before a society; specif., *pl.*, documents providing identity, validity, authorization, etc.; as an officer's *papers.*"

Webster shows "paper" and "document" to be synonymous:

"Paper as here compared, is the general term for a printed or written instrument of whatever sort; document, which may apply to anything written, printed, or inscribed, suggests esp. a source of information, evidence or proof; as, state *papers;* to sign a *paper.* . . ."

Black's Law Dictionary, Fourth Edition, defines the word "paper" as follows:

"A written or printed document or instrument. A document filed or introduced in evidence in a suit at law, as, in the phrase 'papers in the case' and in 'papers on appeal.' Any writing or printed document, including letters, memoranda, legal or business documents, and books of account, as in the constitutional provision which protects the people from unreasonable searches and seizures in respect to their 'papers' as well as their houses and persons. . . ."

The word is also defined in 67 C. J. S., Paper, p. 555, to mean a document, essay or the like; a writing; any written or printed document or instrument.

It follows that each separate sheet may not be considered a "paper" within the meaning of the statute, but that each group of sheets stapled or fastened together and filed as one document must be regarded as a separate protest petition. From the standpoint of

verification, each petition shall be deemed sufficient if properly verified by a qualified elector who signed the particular petition. In the instant case, the written protest contained 42 separate sheets which were stapled together forming 12 separate petitions, and each petition was verified by a signer of each such petition in the form and manner required. Since these petitions contained the names and residence of 664 qualified electors, being twice the number required by the statute to call an election, the district court erred in concluding that, as a matter of law under the admitted facts, the protest petitions were insufficient, and in rendering summary judgment for the appellees.

In deciding the case below, it is clear the district court relied upon the rationale of *State, ex rel., v. Dunn,* supra. The appellees do not contend, and the district court did not find, the statute applied in that case, R. S. 13-1711 (now K. S. A. 13-1711), was in *pari materia* with K. S. A. 12-688, here involved. The rule of statutory construction that statutes in *pari materia* are to be compared with each other and construed together is only applicable to statutes relating to the same subject matter. (*Sutton v. Frazier,* 183 Kan. 33, 325 P. 2d 338.) The *Dunn* case involved the sufficiency of a petition to require submission of the question of abandoning the city manager form of government in Wichita as provided in R. S. 12-1001 to 12-1020 (now K. S. A. 12-1001 to 12-1020). The statute used as a measure by the court in construing the sufficiency of that petition was 13-1711, providing procedure for the removal of public officials. The statute here involved pertains to the improvement of trafficways in cities and to protests calling for an election. The *Dunn* case was distinguished and virtually overruled in *State, ex rel., v. City of Walnut,* 165 Kan. 205, 193 P. 2d 172. That case involved the sufficiency of a petition to call a special election to determine whether an electric-light franchise should be granted. Mr. Justice Harvey wrote the opinion for the court in the *Dunn* case, and was a member of the court when Mr. Justice Hoch wrote the opinion for the court in the *City of Walnut* case, and did not dissent or specially concur. In the *City of Walnut* opinion it was said.

"The defendants also lean heavily upon the case of *State, ex rel., v. Dunn,* supra, which, it is urged, presented an analogous situation. The petitions in that case were to secure submission of the question of abandoning the city manager form of government in Wichita. The question of verification was one among a number of questions considered. The petition consisted of 298

separate sheets and was verified, but each sheet was not separately verified. It was said in the opinion that such verification did not comply with the requirements of G. S. 1935, 13-1711, which requires that 'each paper' be separately verified. Section 13-1711 is a statute providing the procedure for the removal of elective officers. No reason was stated in the opinion for regarding it as applicable to the statute relating to abandonment of the city form of government. Nor was there any discussion in the opinion of the doctrine of *pari materia* in the construction of statutes. It does not appear that any question had been raised as to whether provisions of 13-1711 were applicable. In any event, the case did not deal with the instant statute, and is not controlling here." (l. c. 211.)

The language of 13-1711 prescribing the form and manner of verification is very similar to the language requiring verification in 12-688. However, the former requires that "each paper" be verified, while the latter uses the phrase "each such paper," and makes one other minor distinction not here important. It is obvious the statutes do not relate to the same subject matter and are not in *pari materia*, and the rationale of the *Dunn* case may not be applied to control the construction of the statute under consideration. However, we do not rest our decision upon that distinction. We are of the opinion the *Dunn* case incorrectly construed the word "paper" to mean a "sheet" of paper, when it was intended by the legislature to be used synonymously with the term "written document," such as a petition, as heretofore concluded. The construction placed upon the statute in the *Dunn* case erects technicalities and thwarts the legislative intent requiring verification, and, accordingly, we hold that paragraph 7 of the syllabus and the corresponding portion of the opinion on pages 193 and 194 are not correct statements of the law, and they should be and are hereby overruled.

In view of the foregoing, the judgment of the district court is reversed with directions to proceed in conformity with the views expressed herein.

It is so ordered.