No. 46,993

HARLEY SELTMANN, ARNOLD GREENWALD, RALPH WELTMER, OSWALD SCHNEIDER, BEN DAUBERT, DARREL OCHS, FRANK OBORNY, JR., WILBUR BRACK, REUBEN OCHS, LAWRENCE WEBS, LAWRENCE CUTHELL, ERNEST SELTMANN, A. RONALD WILSON, JEAN J. OBORNY, and W. E. MONEY, *Plaintiffs-Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF RUSH COUNTY, KANSAS, consisting of JOHN KOBER, REUBEN ROMEISER, and RAYMOND REICHEL; JOHN KOBER, individually; REUBEN ROEMEISER, individually; RAYMOND REICHEL, individually; THE BOARD OF TRUSTEES OF THE RUSH COUNTY MEMORIAL HOSPITAL, La Crosse, Kansas, consisting of EDWARD OBORNY, JR., EDWARD JUNO, EL VERNE SELTMANN, CLARENCE WILSON, and E. L. WAGNER; EDWARD OBORNY, JR., individually; EDWARD JUNO, indivdually; EL VERNE SELTMANN, individually; CLARENCE WILSON, individually; and E. L. WAGNER, individually, *Defendants-Appellants.*

(512 P. 2d 334)

Opinion filed July 14, 1973.

*Ivan D. King,* of La Crosse, argued the cause, and was on the brief for the appellants.

*Michael S. Holland,* of Russell, argued the cause, and *Herbert N. Holland,* of Russell, was with him on the brief for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action to enjoin the Board of County Commissioners of Rush County from constructing a medical clinic

without first obtaining the approval of the electors of the county. The facts in the case are not in dispute. The plaintiffs-appellees are all residents and taxpayers of Rush county. They complain that the board of county commissioners contemplate action which is in violation of certain statutes and which would result in the imposition of an illegal tax upon them. Plaintiffs brought this action under the authority of K. S. A. 60-907.

The only hospital in Rush county is owned and operated by the county. In 1945 the state legislature enacted a statute which provided in effect that counties having less than 40,000 population could, under specified conditions, establish a county hospital and issue bonds to finance its construction. Pursuant to this statute in 1946 the board of county commissioners of Rush county passed a resolution to submit to the electors a proposal to issue $300,000 worth of bonds to purchase a site and construct a county hospital. The people approved the proposition in an election and the hospital was completed in 1951. In 1958 an addition to the hospital was constructed after a proposition had been submitted to the electors for approval and was approved. At the time of the trial it was undisputed that Rush county had an investment in its hospital in excess of $700,000. Like many counties in the state, Rush county is in need of doctors and it was felt that the hospital would have to close and that the county would lose its investment if no more doctors were attracted to the county. Two doctors of osteopathy were found who were willing to move to La Crosse where the hospital was located, if facilities for a medical clinic were made available to them. These doctors were willing to pay a reasonable and fair rental for suitable premises.

On June 1, 1972, the board of county commissioners decided to build and equip a medical clinic on its own land adjoining the county hospital. The proposed cost of the improvement would not exceed $50,000. The board of commissioners decided to build the building without submitting the same for approval to the electors in the district as they had previously done when the hospital was constructed and later expanded. The board of commissioners determined to proceed under the authority of K. S. A. 1971 Supp. 19-15,114, et seq. which authorized the board of county commissioners of any county to construct a "public building" and to issue general obligation bonds of the county without submitting the question of the issuance of such bonds to the electors of the county where the

proposed cost of the improvement would not exceed $100,000. Since the cost of the new medical clinic was not to exceed $50,000, a vote of the people would not be required if 19-15,114, *et seq.*, were applicable.

Shortly after the passage of the resolution to build the medical clinic, plaintiffs filed this action as taxpayers to enjoin the construction on the theory that the board of county commissioners was required as a matter of law to proceed under the provisions of the specific statute pertaining to hospitals and medical clinics as set forth in K. S. A. 1971 Supp. 19-1869, which in substance requires a vote of the people to authorize a county to construct and equip a medical clinic used in connection with the operation of an existing county hospital. The plaintiffs also joined as party defendants the Board of Trustees of the Rush County Memorial Hospital and its individual trustees.

There is no factual issue in the case. The matter was presented to the trial court as a pure question of law. Simply stated the issue of law presented to the court was as follows: Which statute should be followed by the board of county commissioners in order to build the proposed medical clinic?

(*a*) K. S. A. 1971 Supp. 19-15,114, *et seq.* which pertains to the construction of a "public building" and requires an approval of the electors only where the cost of the construction exceeds $100,-000; or

(*b*) K. S. A. 1971 Supp. 19-1869 which is applicable to the construction of a medical clinic used in connection with the operation of a county hospital and which requires an approval of the electors without regard to the cost of construction.

The district court held that 19-1869 was the controlling statute and that a vote of the people was required before the medical clinic could be constructed by the board of county commissioners. The trial court issued an injunction enjoining the board of county commissioners from proceeding to take action to construct the hospital under 19-15,114, *et seq.* The county commissioners have appealed to this court.

At the outset the appellants challenge the right of the plaintiffs to maintain this action. They contend that the appellees are attacking a discretionary decision of the board of county commissioners to build a medical clinic and that the relief sought affects merely the interests of the public in general and not those of the plaintiffs privately. We do not agree. The action was properly brought

under the provisions of K. S. A. 60-907 which provide in substance that an action for an injunction may be brought by any number of persons whose property may be affected or whose taxes may be increased by the doing of any act by a public official not authorized by law. When his pocketbook is affected a taxpayer is guaranteed a statutory remedy under K. S. A. 60-907. It is clear from the record in this case that the relief sought by the plaintiffs was precisely that mentioned in the statute and therefore plaintiffs were entitled to bring the action. (*Linder v. Board of County Commissioners,* 186 Kan. 107, 348 P. 2d 815; *Tripp v. Board of County Commissioners,* 188 Kan. 438, 362 P. 2d 612; *Schulenberg v. City of Reading,* 196 Kan. 43, 410 P. 2d 324; *Graham v. Corporon,* 196 Kan. 564, 413 P. 2d 110; *DeForest v. Herbert,* 204 Kan. 516, 464 P. 2d 265; *Mobil Oil Corporation v. Medcalf,* 207 Kan. 100, 483 P. 2d 1111.)

The appellants maintain that the trial court erred in failing to dismiss the Board of Trustees of the Rush County Memorial Hospital for the reason that no relief was sought nor obtained against it. We think it obvious here that the board of trustees of the hospital was vitally interested in the issue presented in the case. Under the provisions of K. S. A. 1971 Supp. 19-18,117 and 19-18,118, the governing body of a county hospital is granted authority to construct a medical clinic to use in connection with the hospital subject to certain prescribed procedures. The trustees were proper parties in the action under the definition of "proper parties" stated in *Cities Service Oil Co. v. Kronewitter,* 199 Kan. 228, 428 P. 2d 804:

"Proper parties are those without whom the cause might proceed but whose presence will allow a judgment more clearly to settle the controversy among all the parties. . . ." (Syl. ¶ 1.)

Furthermore there is nothing in the record to show that the trustees of the hospital sought to be dismissed as party defendants in the case. We find no error in the fact that the trial court permitted them to remain as parties in the course of the litigation.

We now turn to a consideration of the primary issue presented on this appeal. As stated earlier in the opinion our problem is to determine what statutory procedure the board of county commissioners was required to follow to construct a medical clinic to be used in connection with the Rush county hospital. A consideration of this issue requires us to bring the pertinent statutes into sharper focus. The board of county commissioners rely upon K. S. A. 1971 Supp. 19-15,114, *et seq.* which covers the general subject of county

buildings. From 1868 until 1965 the legislature maintained a consistent legislative policy that a county could not appropriate money for public buildings without a popular vote of the electors of the county. This policy found its origin in a general statute covering counties and county officials. (G. S. 1868, Chapter 25, § 18.) This statute was amended from time to time down through the years and may be read in its most recent form in K. S. A. 19-1503. In 1965 the legislature modified its general legislative policy by enacting what is now K. S. A. 1972 Supp. 19-15,114 through 19-15,118. 19-15,114 defines a "public building" as including any building or structure determined by the board of county commissioners to be necessary to the county for any public county purposes. 19-15,115 gives the county commissioners a general power to construct a public building. 19-15,116 empowers the board of county commissioners to issue general obligation bonds of the county but requires a vote of the electors of the county where the cost of the proposed construction exceeds $100,000. 19-15,117 authorizes a county to lease a public building

". . . [W]hen the board of county commissioners shall by resolution determine that the same is not required for county purposes, . . ."

There is no question that the legislature intended to relax its previous legislative policy that a county could not construct any public building without the consent of the people. The board of commissioners relies upon these statutes to support its position that it may issue general obligation bonds of the county without a vote of the people since the cost of the proposed construction and equipping of the medical clinic would not exceed $50,000.

The plaintiffs rely upon K. S. A. 1971 Supp. 19-1869 which is contained in Article 18 of Chapter 19 of the Kansas Statutes Annotated. In 1913 the legislature first provided for the establishment and maintenance of county hospitals. The original enactment was L. 1913, Chapter 202. This statute has been amended from time to time down through the years and may be found in its latest form in K. S. A. 1972 Supp. 19-1801, *et seq.* The statutes pertaining to the construction of county hospitals have consistently required an approval by the electors in the county as a condition precedent to a construction program. In 1945 the board of county commissioners of any county were empowered to submit to the people a resolution to enlarge and make additions to a county hospital previously established. (K. S. A. 19-1869.) 19-1869 was in effect

when the legislature enacted 19-15,114, *et seq.* in 1965. Apparently the legislature felt the need of the public for medical clinics to be used in connection with county hospitals. In 1970 the legislature amended 19-1869 to permit the constructing and equipping of medical clinics used in connection with county hospitals. It does not appear that medical clinics were previously referred to in connection with county hospitals. K. S. A. 1971 Supp. 19-1869, which is relied upon by the plaintiffs as the controlling statute, specifically requires a vote of the people as a condition precedent to the construction of a medical clinic by a board of county commissioners.

The question as to which of the two statutes is controlling in this case is not wholly free from difficulty. Counsel for the board of county commissioners has argued in a forceful manner that our primary purpose in construing statutes should be to determine the purpose and intent of the legislature and that statutes *in pari materia* should be construed together and harmonized so that all may be given full force and effect in their intended field and scope of operation. He maintains that the statutes involved in this case should be reconciled as alternative statutory procedures which permit a county to construct buildings contemplated in each statute with overlapping alternative procedures in cases like the present. Under this argument the board of county commissioners may proceed under either K. S. A. 19-15,114, *et seq.* or 19-1869 whichever it deems advisable.

The trial court and plaintiffs-appellees relied upon the general rule of statutory construction that when there exist two statutes, one of which has a general application and the other a specific application to a subject, the specific statute is controlling. The rule is stated in *Board of Park Commissioners v. Board of County Commissioners,* 206 Kan. 438, 480 P. 2d 81, as follows:

"General and special statutes should be read together and harmonized where possible, but to the extent of repugnancy between them the special statute will prevail over the general unless it appears the legislature intended to make the general act controlling." (Syl. ¶ 1.)

Our cases are legion which support this general proposition.

We should first consider what is meant by the terms general and special statutes or laws. 82 C. J. S. Statutes § 163 distinguishes between a general and a special law as follows:

"A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special." (p. 277.)

This definition is supported in the note by case law from a number of jurisdictions. The definition is simple and clear and we are inclined to accept it.

When we turn our attention to the statutes in question here it is obvious to us that K. S. A. 1971 Supp. 19-15,114, *et seq.* is a general law which covers a general class, public buildings generally. It is also clear to us that K. S. A. 1971 Supp. 19-1869 is a special statute since it relates to a particular member of the class of public buildings, medical clinics used in connection with county hospitals. Is there repugnancy between the general statute and the special statute? We believe there is. The statutes are in conflict and repugnant to each other in that the general statute, K. S. A. 19-15,114, *et seq.*, does not require a vote of approval from the people where the construction cost of a public building is less than $100,000, whereas the specific statute, K. S. A. 19-1869, requires the submission of a proposal to construct a medical clinic to the vote of the electors for their approval in all cases. As the appellees point out in their brief, the conflict between the statutes is "vote" versus "no vote" when applied in the case at bar.

Under the rule stated above a special statute prevails over a general statute *unless it appears that the legislature intended to make the general act controlling.* This requires us to consider the statutory circumstances involved in this particular case to determine the legislative intent. We have concluded on the record presented to us that it has not been shown that the legislature intended to make the general act controlling and therefore the specific statute pertaining to the construction of medical clinics should be applied and followed. We wish to make it clear that in other cases the intention of the legislature to make the general statute controlling may be shown by an expressed legislative intention to that effect or by other circumstances not present here. We have decided this case solely upon the record before us.

In their stipulation of fact the board of county commissioners specifically stated that they contemplated leasing the proposed diagnostic and treatment center to two doctors for a rental fee, but if the court felt a rental fee is improper then no rent will be collected from the doctors. Whether or not a rental fee is to be charged the doctors, it is clear that the board of commissioners intend to construct a building for a medical clinic and then turn it over to the doctors for their private use. We question whether a

board of county commissioners may construct a medical clinic under the provisions of 19-15,114, *et seq.* without a vote of the people on the theory that it is a public building necessary for a public county purpose, and then after it is built to immediately lease it for a private use on the theory that it is no longer required for county purposes as authorized by 19-15,117. We also consider it important in this case in determining legislative intent that the legislature amended the specific statute 19-1869 in 1970 by including within its provisions medical clinics used in connection with the operation of county hospitals. This action indicates a legislative intent to carve out an exception to the general provisions contain in 19-15,114, *et seq.* adopted in 1965.

We agree with counsel that there are no Kansas cases exactly in point covering the necessity of submitting a proposition to the vote of the people under a special statute where there is no such requirement in a general statute pertaining to the same subject. There are, however, cases from other jurisdictions where the problem has been presented and the courts have held that the special statute requiring a vote of the people controls. In *Varney v. City of Albuquerque*, 40 N. M. 90, 55 P. 2d 40, a general statute permitted cities to borrow money for the erection of all needed buildings with the approval of the majority of the electors. A special statute authorized a city to erect a "public auditorium" but required an approval by ⅔ of the votes casts at an election for approval of a project to build a public auditorium. The court held that there was a conflict as to the percentage of votes required and that the special statute controlled.

In *Armstrong v. Comrs.*, 185 N. C. 405, 117 S. E. 388, a board of county commissioners was authorized by a general statute to levy a special tax for the preservation of the public health. A special statute empowered a board of county commissioners to issue bonds and establish a tuberculosis hospital after authorization by a popular vote. The Supreme Court of North Carolina held that the special statute pertaining to the establishment of a public hospital and requiring a popular vote was controlling over the general statute and that the county hospital could not be constructed without prior approval of the people.

On the record before us we find that the trial court was correct in holding that the special statute, K. S. A. 1971 Supp. 19-1869, was the controlling statute and that the proposed action of the board

of county commissioners was illegal because it was not following the proper statute which the legislature had provided it to use in accomplishing its proposed objective, the construction of a medical clinic to be used in connection with the operation of an existing county hospital.

The judgment of the district court is affirmed.