NOT DESIGNATED FOR PUBLICATION

No. 115,641

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GERALD LEE HOLLEY II,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pottawatomie District Court; JEFFREY R. ELDER, judge. Opinion filed September 15, 2017. Affirmed.

*D. Ariel Wilson*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.

PER CURIAM: Gerald Lee Holley II appeals his conviction for possession with intent to use drug paraphernalia to distribute a controlled substance, arguing that the statute under which he was convicted is a general offense and that he should have been convicted of the more specific offense of possession of drug paraphernalia with the intent to store or contain a controlled substance. While it is true that a specific statute controls over a general one, the two statutes in question here cover different conduct and one is not more specific than the other. So this claim of error fails. Holley also appeals his conviction for distribution of marijuana, arguing that the conviction was based on

1

unbelievable, uncorroborated testimony of Jeremy Swenson. However, the State presented evidence beyond Swenson's testimony including the fact that police found 45 grams of marijuana throughout Holley's house, there was short-term traffic at Holley's house that was consistent with drug trafficking, and the fact that Holley could not explain how the marijuana, some of which was in plain view, got into his house. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Holley and Swenson were friends. In November 2014, police stopped Swenson's vehicle for expired tags. Police searched Swenson and his vehicle and found methamphetamine, marijuana, and drug paraphernalia. Swenson told the police that he bought the marijuana, which was worth about $20 or $25, from Holley. Police did not offer Swenson anything to entice him to reveal this information. But, Swenson had some of his criminal charges dismissed in exchange for his cooperation with authorities.

Sergeant Brian Woodworth of the Pottawatomie County Sheriff's Office conducted surveillance on Holley's house. He observed several vehicles come and go to Holley's residence, as well as some foot traffic. Another officer testified that this traffic was a potential indicator of drug distribution.

The Pottawatomie County Sheriff's Office and Wamego Police Department executed a search warrant on Holley's house. Holley was the only person in the residence. The police searched Holley and found a small vial of methamphetamine, along with a small straw, and a glass lens in his pocket. Stashed in a stove in the kitchen, the police found marijuana in a black garbage bag, a gallon-sized Ziplock bag, and three cardboard United States Postal Service mailing boxes. The mailing boxes did not have individually packaged bags of marijuana in them, but rather it was loose in the boxes. Police found plastic baggies in the cabinets above the stove. In the basement, police found more

2

mailing boxes containing marijuana. The police also observed remnants of marijuana, such as seeds, stems, and small pieces of vegetation, throughout the house. Sergeant Woodworth testified that the amount of marijuana and the fact that it was in different containers suggested that Holley was distributing marijuana. The police did not find a scale or cash—both of which are also associated with drug distribution.

Kansas Bureau of Investigation testing revealed that Holley had 0.19 grams of methamphetamine and 45.71 grams of marijuana.

Drug paraphernalia was also found in the house. While searching Holley's bedroom, police found a glass smoking pipe with methamphetamine residue in it. In the living room, police found two dugouts with marijuana residue in them and another glass smoking pipe. Police found a glass pipe with "4/20" and "Kush" printed on it as well as a brass pipe in the garage.

Holley denied selling marijuana to Swenson. He alleged that Swenson brought a garbage bag of ditch weed that Swenson had picked after work to his house. Holley said that he told Swenson, "[Y]ou need to get this the hell out of my house. This is ditch weed and it always seems to get me into trouble." Holley did not watch to see if Swenson removed the bag from the house because Holley had just drawn bathwater to soak his feet. When Holley finished his foot bath, he did not see the garbage bag of marijuana. Holley denied knowing that the bag was in his oven. Holley could not explain how the marijuana got into the postal boxes. Holley also said that Swenson left him the small vial of methamphetamine that was on Holley's person when police executed the search warrant of Holley's house.

A jury found Holley guilty of unlawful possession with intent to distribute marijuana, possession of methamphetamine, possession of marijuana without a drug tax stamp, possession with the intent to use Ziplock baggies as drug paraphernalia, and

possession with the intent to use smoking devices as drug paraphernalia. Holley's criminal history score was E. The district court imposed a mitigated sentence of 55 months for the distribution charge. The court ordered the sentences for Holley's other charges to run concurrent with the distribution sentence.

Holley appealed.

ANALYSIS

*Holley was convicted of two distinct offenses.*

"When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling." *State v. Williams*, 250 Kan. 730, Syl. ¶ 3, 829 P.2d 892 (1992). Holley received two convictions for drug paraphernalia for his possession of Ziplock baggies and smoking devices. Possession of the smoking devices was charged as a class A nonperson misdemeanor under K.S.A. 2014 Supp. 21-5709(b)(2), which prohibits using or possessing with intent to use drug paraphernalia to "store, contain, conceal, inject, ingest, inhale or otherwise introduce a controlled substance into the human body." Possession of the Ziplock baggies was charged as a severity level 5 felony under K.S.A. 2014 Supp. 21-5709(b)(1), which prohibits using or possessing with the intent to use drug paraphernalia to "[m]anufacture, cultivate, plant, propagate, harvest, test, analyze or distribute a controlled substance." Holley is challenging his conviction for possession of the Ziplock baggies. He argues that K.S.A. 2014 Supp. 21-5709(b)(2) is a more specific statute than K.S.A. 2014 Supp. 21-5709(b)(1), and that it was error for him to be convicted of a general offense when a more specific one existed.

4

Analysis of this issue requires us to engage in statutory interpretation. We employ unlimited review over issues of statutory interpretation. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Holley does not cite any authority for his proposition that K.S.A. 2014 Supp. 21-5709(b)(2) is a more specific offense than K.S.A. 2014 Supp. 21-5709(b)(1). It does not appear that Kansas courts have decided this exact issue. Holley does rely on *Williams* for its application of the specific statute principle. So we will examine *Williams* in more detail

Kenneth Williams was charged with indecent liberties with a child. His behavior was proscribed by the indecent liberties with a child statute, K.S.A. 1991 Supp. 21-3503(1)(b), as a Class C felony. His behavior was also proscribed by the aggravated incest statute, K.S.A. 1991 Supp. 21-3603(1) and (2)(b), as a Class D felony. The distinguishing factor between the statutes is that, in order to charge an offender with aggravated incest, he or she must have a familial relationship with the victim. Williams argued, and the district court agreed, that the aggravated incest was a more specific criminal offense than indecent liberties with a child. The State appealed. The Supreme Court agreed with the district court, reasoning: "For the general statute versus specific statute rationale to be applicable to the two crimes, the indecent liberties statute must be viewed as a statute generally prohibiting certain sexual behavior and the aggravated incest statute as applying to the identical prohibited conduct by a person related to the victim." 250 Kan. at 736. The court concluded that the difference between the statutes showed a legislative intent to "establish certain sex offenses applicable where family relationships are not involved" and also a legislative intent "that aggravated incest, a crime committed by a person related to the victim, constitutes a less serious offense than when a similar prohibited act is perpetrated by a defendant against a child with whom he or she has no family relationship." 250 Kan. at 736-37.

5

But in contrast to *Williams*, the court in *State v. Helms*, 242 Kan. 511, 513, 748 P.2d 425 (1998), found that indecent liberties with a child is not a more specific crime than rape. Thomas Helms was convicted of raping 12-year-old J.M. The court began by defining the terms general and specific statutes: """A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special."' [*Seltmann v. Board of County Commissioners*, 212 Kan. 805, 810, 512 P.2d 334 (1973)] (quoting 82 C.J.S., Statutes § 163, p. 277)." 242 Kan. at 512-13. The court then noted several differences between the rape and indecent liberties with a child statutes. To prove indecent liberties with a child, the State must prove that the victim is under 16 years of age. This is not required to prove rape. To establish rape, the State must prove that the victim did not consent. This is not required to prove indecent liberties with a child. The indecent liberties with a child statute also covers a wider range of sexual activity than the rape statute, which is limited to acts of sexual intercourse. The *Helms* court concluded that "[a]lthough both crimes may be coincidentally present in the same set of factual events, the two crimes are directed at different actions." 242 Kan. at 513.

This case is more like *Helms* than *Williams*. The crimes contained in both K.S.A. 2014 Supp. 21-5709(b)(1) and (b)(2) may be present in the same set of factual events, but the statutes are directed at different actions. K.S.A. 2014 Supp. 21-5709(b)(2) is directed at persons who are merely possessing controlled substances. K.S.A. 2014 Supp. 21-5709(b)(1) is directed at persons who are manufacturing and distributing controlled substances. Manufacture and distribution of controlled substances is a more serious crime than possession, so it makes sense that the legislature would intend to punish use of drug paraphernalia used to manufacture or distribute more seriously. Compare K.S.A. 2014 Supp. 21-5706(c)(2)(A) (classifying marijuana possession as a misdemeanor) with K.S.A. 2014 Supp. 21-5705(d)(2) (classifying unlawful cultivation or distribution of marijuana as a felony). Thus, Holley's claim of error fails.

*There was sufficient evidence of Holley's intent to distribute marijuana.*

Holley argues that his conviction for distribution of marijuana is predicated only upon Swenson's uncorroborated testimony, and that Swenson's testimony is unreliable. Accordingly there was insufficient evidence to support a conviction.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015).

Holley cites *State v. Matlock*, 233 Kan. 1, 660 P.2d 945 (1983), in support of his argument that Swenson's testimony cannot be the sole basis for his conviction. *Matlock* involved a rape conviction, and the conviction was predicated solely on the testimony of the victim. The court held that "in order to convict on the uncorroborated testimony of the prosecutrix, the testimony of the prosecutrix must be clear and convincing, and that where her testimony is so incredible and improbable as to defy belief, the evidence is *not* sufficient to sustain a conviction." 233 Kan. at 3. The court then listed a number of reasons why the victim's allegations were unbelievable—there were several people present in the house where the alleged rape occurred, none of whom heard or saw anything, the alleged rape occurred on a creaky bed that could be heard in adjacent rooms, the victim did not cry out when the alleged rape occurred, the victim acted friendly toward the defendant before and after the alleged rape, and several other factors. Based on the unbelievable nature of the victim's testimony, the *Matlock* court reversed the rape conviction. 233 Kan. at 6.

Holley argues that Swenson only accused him of selling marijuana because Swenson thought it would help him with his own criminal charges. However, Swenson's

testimony was corroborated which makes this case different than *Matlock*. Several facts corroborate Swenson's testimony: (1) Holley was in possession of 45 grams of marijuana, which is an amount consistent with distribution; (2) Holley had marijuana in multiple containers; (3) short-term traffic at Holley's house was consistent with drug distribution; and (4) while Holley had an excuse for the garbage bag of marijuana in his oven, he had no explanation for how the boxes of marijuana came to be in his house.

Viewing the evidence in the light most favorable to the State, the evidence was sufficient for a jury to conclude beyond a reasonable doubt that Holley distributed marijuana. Accordingly, his conviction is affirmed.

Affirmed.